ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY

v.

JOHN H. ALSDURF, ADMINISTRATOR.

*Master and Servant—Railroads—Negligence—Injury to Employe.*

1. When a defendant offers evidence and proceeds with the case. after the overruling of a motion on his part, made at the close of the plaintiff's evidence, to direct a verdict for the defendant, the propriety of such refusal can not be raised upon appeal.

2. In the absence of any agreement a railroad company is not bound to furnish any better side tracks than such as are in general use, and it is proper in personal injury cases, where injuries are alleged to have occurred through defective side tracks, to admit evidence going to show that the tracks in question were constructed and kept in the usual and customary manner.

3. Railroad brakemen must be held to understand the ordinary hazards attending their employment and to voluntarily take upon themselves those hazards when they enter upon their duties.

4. The law will imply, in a given case, notice upon the part of a servant of those things which it was his duty to observe and with which he had ample opportunity to become acquainted.

[Opinion filed May 25, 1893.]

APPEAL from the Circuit Court of Grundy County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Mr. S. C. Stough, for appellant.

Mr. E. L. Clover, for appellee.

Mr. Justice Cartwright. This is a suit by appellee as administrator of Eugene C. Judd to recover damages on account of the death of said Judd, who was killed at Mazon, Illinois, while in the employ of appellant, as brakeman on a freight train. It was charged in the declaration that while deceased was in the performance of his duty he was run over and killed because of negligence of appellant in not keeping the spaces between the ties filled with gravel, cinders or other material in the side track where the accident occurred, and in keeping old rails on said track on which there were iron slivers. There was a trial and appellee recovered $3,500.

At the close of appellee's evidence appellant made a motion to exclude such evidence and direct a verdict for appellant. The motion was overruled, but appellant did not stand by it, and proceeded to offer evidence in its own behalf upon the issues before the jury, and did not afterward renew the motion. It is now urged that the ruling was wrong, but appellant is not in a position to raise that question. J. A. & N. Ry. Co. v. Velie, 140 Ill. 59.

The circumstances under which Judd lost his life, as proved on the trial, were as follows: On November 12, 1890, he was one of a freight train crew consisting of Fremont Miller, conductor; Edward Rhoads, engineer; Fred. Cornell, fireman, and Eugene C. Judd, head brakeman, and John F. Beard, rear brakeman. The train arrived at Mazon from the East between seven and eight o'clock in the evening and went on the passing track to let the mail train by. There were four cars standing together on the east end of the side track south of the passing track, and the freight train was to take out the east three cars, leaving the west car on the side track. It was quite dark. Judd went to the night operator and got the bills for the three cars to be taken out, and the operator pointed out where the cars were.

Judd uncoupled the engine, and it came back on the main track and went in on the passing track to the rear of the train, and after taking up the way car and a coal car in front of it, stood there until the mail train passed. It then drew them back and went in on the side track, pushing the coal car and way car in front of it, for the purpose of coupling on the three cars and pulling them out. John F. Beard, the rear brakeman, was controlling the movements of the engine by signals with his lantern, according to the custom, and he was on the south side of the engine and cars. The three cars to be taken out were coupled together, but whether they were coupled to the fourth car does not appear. The first knowledge that any person had of Judd after the coupling on of the way car and coal car on the passing track was that he was found dead under the west car of the three that were to be taken out, the west trucks on the north side of that car having passed over him. His lantern was setting on the ground north of the car and it was evident that he had gone from the north side between the third and fourth cars for some purpose, and the car being pushed forward, the trucks ran over him. No one knew that he was between the cars, and he had given no signal that he intended to go there. There was evidence that there was a splinter on the north rail about where he lay in which was found a scrap of cloth, but there was no evidence that the cloth corresponded with or was any part of any clothing worn by him. The side track had been there for seventeen years, and there had been no change in it at the place where the accident occurred for several years. West of that point it had been recently moved and replaced in substantially the same condition as before, but that had no connection with the accident. The spaces between the ties were filled with dirt in the center of the track level with the tops of the ties, but the dirt receded from the center to the ends of the ties, so that there was no ballast or filling at the outer ends of the ties. This condition of the side track was proven in support of a charge of negligence made in the declaration, and appellant then

sought to prove, by witnesses who were acquainted with the usual and customary manner of constructing side tracks in this country and the general standard of such construction on well managed railroads, that the side track in question was constructed in such usual and customary manner and according to such standard. It was proposed to prove that side tracks generally in this country were constructed in the same manner and kept in the same condition as this one in respect to having the spaces filled between the ends of the ties. This proof was rejected by the court, and it is claimed that the only right appellant had was to furnish the jury with a description of the side track, and that it became the exclusive province of the jury to decide from such description, without any further aid, whether it was such a side track as should have been built and maintained, and whether appellant had been guilty of a failure in its duty toward deceased in not constructing and maintaining it in a different manner.

We think that the proffered evidence was competent. In the absence of any agreement, appellant was not bound to furnish a better track than such as were in general use, or to furnish such a track as the jury might rightfully regard as safer than the customary one. The deceased must be held to have understood the ordinary hazards attending his employment as a brakeman and to have voluntarily taken upon himself those hazards when he entered appellant's employment. Hazards arising out of the usual and general methods of construction on well managed railroads of the side tracks upon which brakemen perform their duties, must be considered as ordinary and incidental to the business generally and therefore as being generally assumed, by the contract of employment.

Appellant asked the court to give to the jury in the fifth instruction on its behalf the rule of law that if the condition of the track was open and notorious, and that deceased, prior to the accident, had ample opportunity to become acquainted with its condition, then the law would charge him with such knowledge. The court modified the instruction so as to

require proof of absolute knowledge on the part of deceased of such condition in order to charge him with notice. The evidence was that he had been a baggageman and brakeman for six years; that he had been a brakeman on this road for three months and that he had worked recently as brakeman on a gravel train ballasting the track in that vicinity and during that employment had often been on and about the side track. The law would imply notice of those things which it was his duty to observe, and with which he had ample opportunity to become acquainted. There was evidence on which to base the instruction and it stated the rule on the subject of notice as laid down in I., B. & W. R. R. Co. v. Flanigan, 77 Ill. 365; C. & E. I. R. R. Co. v. Geary, 110 Ill. 383; Wharton on Negligence, Sec. 214. It should have been given as asked. The deceased was clearly chargeable with notice of the manner in which the side track was constructed and ballasted.

From all the facts proven on the trial the conclusion is forced upon us that the death of Judd was due to his own negligence. To go between the cars in the dark during the switching operation without the knowledge of the engineer and without a signal or any precaution, and that, too, from the opposite side of the train from the one where the signals were being given, where he was not able to see what they were so as to know what movements would be made, was so palpably dangerous that it could only be done with the greatest risk to himself of losing his life. He had a right to give signals and to control the engine and should have done so if he desired to go between the cars. It was undeniably both unnecessary and dangerous for him to do as he did. It was a risk not required of him, and the conclusion can not be escaped that he was not in the exercise of ordinary care for his own safety, and that his administrator was not entitled to recover damages for his death. The judgment will be reversed and the cause remanded.

*Reversed and remanded.*