THE STATE OF NEBRASKA, EX REL. THE BURLINGTON & MISSOURI RIVER RAILROAD COMPANY ET AL., V. JOSEPH M. SCOTT, COMMISSIONER, ETC., AND JOHN M. THAYER, GOVERNOR OF NEBRASKA.

1. Practice: DISMISSAL OF ACTION. Under section 430 of the code the plaintiff cannot as a matter of right dismiss an action after the final submission of the case to the court.

2. ———: ———. Where a cause was submitted to the court on a demurrer to the petition and a decision rendered sustaining the demurrer, but no opinion filed, and afterwards and before the preparation of the opinion the plaintiff attempted to dismiss the action, to which the defendant objected, *Held*, That the attempt to dismiss was unavailing, and that the cause having been finally submitted final judgment in the case would be rendered.

3. Railroads: RIGHT OF WAY. Under Art. XI., Chap. 72, Comp. Stat. of 1887, only railroad companies organized under the laws of this state have the right to condemn right of way across lots owned by the state.

4. ———: EMINENT DOMAIN: FOREIGN CORPORATIONS. Under section 8, Art. XI. of the constitution, no foreign railroad corporation doing business in this state can exercise the right of eminent domain or have power to acquire right of way or real estate for depot or other uses unless it organize as a corporation under the laws of this state.

5. ———: ———: ———. The C., B. & Q. R. R. Co. and the L. & N. W. R. R. Co. were joined as relators in an application for mandamus to compel the proper authorities to condemn and convey certain lots belonging to the state. *Held*, That the C.,

B. & Q. R. R. Co., being a foreign corporation, was not entitled to the relief, and that as a foreign corporation is prohibited from acquiring a right of way or real estate for depot or other uses, therefore it cannot do indirectly what it is prohibited from doing directly.

ORIGINAL application for mandamus.

*T. M. Marquett* and *J. W. Deweese*, for relators, on right of consolidation, cited: G. S., 1873, Sec. 114. Iowa Code, Sec. 1275. Right of eminent domain. *B. & O. R. R. Co. v. Koontz*, 4 Am. & Eng. Railroad Cas., 108. *Dietrich v. Lincoln & Northwestern R. R. Co.*, 13 Neb., 361. *C., St. P., M. & O. R. R. Co. v. Lundstrom*, 16 Id., 254. Right to the lands in question. *Gottschalk v. Lincoln & Northwestern R. R. Co.*, 14 Neb., 390. Mills on Eminent Domain, 351. *Hobart v. Ford*, 6 Nev., 77. *Penn. R. R. v. N. Y. R. R.*, 23 N. J. Eq., 157.

*William Leese, Attorney General*, for the respondents, cited: Rorer on Railroads, 38. *Atkinson v. M. & C. R. R.*, 15 Ohio State, 33. *Hull v. C., B. & Q. R. R.*, 21 Neb., 371. *Halbert v. St. Louis, K. C. & N. R. R. Co.*, 45 Iowa, 23.

MAXWELL, CH. J.

This is an application for a peremptory writ of mandamus to require the defendant, Joseph Scott, as commissioner of public lands and buildings, to forthwith prepare a deed for execution by the governor of certain lots owned by the state, and to require the governor to execute and deliver the same to the relators. The relators allege in their petition that, "they are corporations duly organized and existing under and by virtue of the laws of the state of Nebraska, that the Burlington & Missouri River Railroad Company in Nebraska formerly owned a line of railroad extending from the town of Plattsmouth, in Cass county, westwardly, through Saunders, Lancaster, and other counties,

to the town of Kearney, in Buffalo county, and that while it owned this line it leased other lines of railroad centering at Lincoln, Nebraska, and operated the same until the 1st day of January, 1880, at which time the said Burlington & Missouri River Railroad Company in Nebraska, by virtue of the laws of the states of Illinois, Iowa, and Nebraska, was consolidated with the Chicago, Burlington & Quincy Railroad Company, the latter becoming the owner of the said line of railroad formerly owned by the Burlington & Missouri River Railroad Company in Nebraska, and has continued to operate the said line, together with the leased lines above referred to, ever since. That in the said articles of consolidation referred to it was, among other things, provided that the Burlington and Missouri River Railroad Company in Nebraska hereby authorizes the first party (the Chicago, Burlington & Quincy Railroad Company), in the management and conduct of said property, and the sale or disposition thereof, to use the corporate name and seal of the second party (the B. & M.) so far as may be lawfully done, whenever and in such manner as it shall deem necessary or convenient to carry into effect the purposes of these articles, and the first party (the C., B. & Q.) is to and does hereby become liable for and assume all leases, contracts, liabilities, obligations, and debts of the party of the second part. That among the lines that were leased by the Burlington & Missouri River Railroad Company in Nebraska was the Lincoln and Northwestern Railroad, and which lease by the consolidation of said roads was transferred to the Chicago, Burlington & Quincy Railroad Company, and the said Lincoln and Northwestern Railroad has been operated by the Chicago, Burlington & Quincy Railroad ever since the 1st day of January, 1880.

" That prior to the said consolidation it became necessary, in the operation of the said lines of road by the Burlington and Missouri River Railroad Company in Nebraska, to obtain additional grounds at Lincoln, Nebraska, for trackage, depot, and round-house purposes,

and with that end in view purchases and condemnation of lots and lands were made as provided by law from parties who owned the same, and that situated among the grounds necessary for the use and occupancy of said lines of railroad were a number of lots belonging to the state of Nebraska. The said railroad company made application to the commissioner of public lands and buildings for the purchase of the lots belonging to the state at the time, but was informed that there was no authority of law to sell the same, but that the said company could take possession of said lots and use them until such time as the legislature would provide some law for the sale and conveying of the said lots. That said railroad company went through the process of condemning the said lots under the general law of the state providing for condemnation of property, in November and December, 1879, and offered the value as found by the appraisers to the then treasurer and the commissioner of public lands and buildings, which officers declined to accept the same, stating that they had no authority to receive the money or to make or contract the conveyance of said property. The said railroad company took possession of said lots in November and December of 1879, above referred to, and ever since has held the possession, which lots are described as follows: Block 280: all of lots 1, 2, 3, and 4, all of lot 5 lying and being outside of the right of way of the Nebraska Railway connecting track, and containing 6,800 square feet more or less, all of lot 6 lying and being outside of the right of way of the Nebraska Railway connecting track, and containing 4,000 square feet, more or less; block 281: all that part of lot 1 lying and being outside of the right of way of the B. & M. R. R. in Nebraska and the L. & N. W. R. R., and containing 4,800 square feet, more or less, all that part of lot 2 lying and being outside of the right of way of the B. & M. R. R. in Nebraska, and the L. & N. W. R. R., and containing 90 square feet more or less; block 282: all that part of lot 3 lying and being outside the

right of way of the L. & N. W. R. R., and containing 100 square feet, more or less, all that part of lot 4 lying and being outside the right of way of the L. & N. W. R. R., and containing 1,000 square feet, more or less, all that part of lot 5 lying and being outside the right of way of the L. & N. W. R. R., and containing 2,005 square feet, more or less, all that part of lot 6 lying and being outside the right of way of the L. & N. W. R. R., and containing 2,675 square feet, more or less; block 284: all that part of lot 3 lying and being outside the right of way of the L. & N. W. R. R. and the Nebraska Railway connecting track, and containing 3,490 square feet more or less, all that part of lot 4 lying and being outside the right of way of the L. & N. W. R. R. and the Nebraska Railway connecting track, and containing 2,175 square feet, more or less, all that part of lot 5 lying and being outside the right of way of the L. & N. W. R. R. and the Nebraska Railway connecting track, and containing 678 square feet, more or less; block 270: all of lots 4 and 5, all that part of lot 6 lying and being outside the right of way of the B. & M. R. R. in Nebraska, and containing 6,500 square feet, more or less; block 72: all of lot 8.

"That in the extension of depot facilities and yard room necessary to carry on the business of the Lincoln & Northwestern Railroad Company, it became necessary, in 1885, to obtain additional grounds for track purposes and yard room at Lincoln, Nebraska, and the said Lincoln and Northwestern Railroad Company duly appropriated and took possession in October, 1885, of the following described lots and parcels of real estate belonging to the state of Nebraska, to-wit: Block 8: all of lots 7 and 8; block 272: all of lot 4; block 278: all of lots 2, 3, 4, 5, 6, 7, 8, and 12; block 279: all that part of lot 5 lying and being outside the right of way of the connecting track of the Nebraska Railway, and containing 3,450 square feet, more or less; all of lot 10, all that part of lot 11 lying and being outside the right of way of the connecting track of

the Nebraska Railway, and containing 6,230 square feet more or less ; all that part of lot 12 lying and being outside the right of way of the connecting track of the Nebraska Railway, and containing 3,650 square feet, more or less ; block 267 : all that part of lot 3 lying north of the bank of Salt creek.   There being no law at that time by which any title could be obtained, the said railroad company purchased all the adjacent ground to these lots that was owned by private parties, and took possession of the said lots and used the same ever since October, 1885. That a law was passed by the legislature in January, 1887, providing for the manner in which title may be acquired by railroad companies for right of way and other necessary purposes across lands and real estate belonging to the state of Nebraska, and that by virtue of said act, the said railroad companies made application to the commissioners of Lancaster county, Nebraska, to view and appraise the property hereinbefore described, both that which was taken and appropriated by the Burlington & Missouri River Railroad Company in Nebraska, in 1879, and also those lots and parcels of real estate belonging to the state that had been taken and appropriated by the Lincoln & Northwestern Railroad Company, in 1885, which application is in words and figures following, to-wit :

"' To the County Commissioners of Lancaster County, Neb.:

"'The Chicago, Burlington & Quincy Railroad Company and the Lincoln & Northwestern Railroad Company, each and jointly, respectfully represent that the Chicago, Burlington & Quincy Railroad Company is the owner of all the lines of railroad formerly owned by the Burlington & Missouri River Railroad Company in Nebraska, together with all depot grounds, rights, franchises, and property of every description in said state, and that it has the lease of the said Lincoln & Northwestern Railroad, and has the use of all its rights, franchises, and property of every description ; and that heretofore in the obtaining of the necessary depot grounds and right of way in the city of Lincoln,

in said county, the said Burlington & Missouri River Railroad Company in Nebraska and the Lincoln & Northwestern Railroad Company duly appropriated certain lots and parcels of real estate belonging to the state of Nebraska, and the Lincoln & Northwestern Railroad Company and the Chicago, Burlington & Quincy Railroad Company, as the successor of the Burlington & Missouri River Railroad Company in Nebraska, have occupied and used the said lots and parcels of ground ever since their appropriation for depot and station purposes, connected with the use and operation of the said lines of road. The particular lots and parcels of ground are specifically set forth and described in the list hereto attached, together with a memorandum of the time at which the said lots and parcels of real estate were appropriated, occupied, and used by the said railway companies.

" 'Your petitioners therefore respectfully make application, under the law passed by the recent legislature, to you as the commissioners of said county to have the said lots and parcels of real estate appraised, and that as a board of appraisers you make the correct value of the same at the time the said lots and parcels of land were taken by the said railroad lines, as provided in law.'

"That in accordance with the said application, the county commissioners, acting as a board of appraisers under said law, did on the 27th day of May, 1887, duly view, inspect, and examine the said parcels of real estate, and did appraise and value the same, and made their report in writing to the county treasurer of Lancaster county, Nebraska, as provided by said law, which report is in words and figures following, to-wit:

" 'LINCOLN, NEB., May 27, 1887.
" '*To Jacob Rocke, Treasurer Lancaster County, Neb.:*

" 'DEAR SIR—T. E. Calvert, Gen. Supt. C., B. & Q. R. R. Co., filed a petition in the office of the county clerk asking the county commissioners of Lancaster county, Ne-

braska to appraise certain lots and parcels of real estate belonging to the state of Nebraska.

"'We, the board, by the power vested in us by an act of the legislature, as county commissioners of Lancaster county, Nebraska, having viewed the lots and parcels of real estate as described in the petition and as per statement hereto attached, and the value placed opposite each lot being the value agreed upon by us as the value of said lot as found by us at the time said lots were appropriated, occupied, and used by said railroad companies:

| Lot. | Block. | Value. | Lot. | Block. | Value. |
|---|---|---|---|---|---|
| 1 | 280 | $31.00 | 8 | 72 | $353.00 |
| 2 | 280 | 28.00 | 4 | 270 | 183.00 |
| 3 | 280 | 28.00 | 5 | 270 | 183.00 |
| 4 | 280 | 28.00 | 6 | 270 | 167.00 |
| 5 | 280 | 25.00 | 7 | 8 | 533.00 |
| 6 | 280 | 22.00 | 8 | 8 | 483.00 |
| 1 | 281 | 22.00 | 4 | 272 | 50.00 |
| 2 | 281 | 17.00 | 2 | 278 | 45.00 |
| 3 | 283 | 13.00 | 3 | 278 | 45.00 |
| 4 | 283 | 11.00 | 4 | 278 | 45.00 |
| 5 | 283 | 19·00 | 5 | 278 | 45.00 |
| 6 | 283 | 9.00 | 6 | 278 | 45.00 |
| 3 | 284 | 13.00 | 7 | 278 | 47.00 |
| 4 | 284 | 13.00 | 8 | 278 | 47.00 |
| 5 | 284 | 17.00 | 12 | 278 | 50.00 |
| 5 | 279 | 65.00 | 11 | 278 | 67.00 |
| 10 | 279 | 68.00 | 12 | 279 | 67.00 |
| | | | 3 | 267 | 10.00 |

"'Witness our hands this 27th day of May, 1887.

"'H. C. RELLER,
"'ALBA BROWN,
"'H. H. SHABERG,
"'County Commissioners Lancaster County, Neb.
"'Attest:
"'O. C. BELL,
"'Co. Clerk, Lancaster Co., Neb.'

"That in accordance with the appraisement and the report made by the said county commissioners, said railroad companies did, on the 31st day of May, 1887, pay to the county treasurer the amount of said value and appraise-

ment, as made by said board of appraisers, and said county treasurer gave a receipt therefor, and the county clerk of said county transmitted a duplicate to the commissioner of public lands and buildings to be entered on record, as in other cases of payments on educational lands, as provided by said act, which receipt is in words and figures following, to-wit:

" '$2,884.50.

" ' TREASURER'S OFFICE, LANCASTER Co., NEB.
" ' LINCOLN, NEB., May 31, 1887.

" 'Received of the Chicago, Burlington & Quincy Railroad Company, of the Burlington & Missouri River Railroad company in Nebraska, twenty-eight hundred and eighty-four dollars to be applied as pay in full for the following described lots and parts of lots in the city of Lincoln:

| Lot. | Block. | Value. | Lot. | Block. | Value. |
|---|---|---|---|---|---|
| 1 | 280 | $31.00 | 8 | 72 | $353.00 |
| 2 | 280 | 28.00 | 4 | 270 | 183.00 |
| 3 | 280 | 28.00 | 5 | 270 | 183.00 |
| 4 | 280 | 28.00 | 6 | 270 | 1167.00 |
| 5 | 280 | 25.00 | 7 | 8 | 533.00 |
| 6 | 280 | 22.00 | 8 | 8 | 483.00 |
| 1 | 281 | 22.00 | 4 | 272 | 50.00 |
| 2 | 281 | 17.00 | 2 | 278 | 45.00 |
| 3 | 283 | 13.00 | 3 | 278 | 45.00 |
| 4 | 283 | 11.00 | 4 | 278 | 45.00 |
| 5 | 283 | 9.00 | 5 | 278 | 45.00 |
| 6 | 283 | 9.00 | 6 | 278 | 45.00 |
| 3 | 284 | 13.00 | 7 | 278 | 47.00 |
| 4 | 284 | 13.00 | 8 | 278 | 47.00 |
| 5 | 284 | 17.00 | 12 | 278 | 50.00 |
| 5 | 279 | 65.00 | 11 | 279 | 67.00 |
| 10 | 279 | 68.00 | 12 | 279 | 67.00 |
| | | | 3 | 267 | 10.00 |
| | | $419.00 | | | $2,465.00 |

" ' Total..................................$2,484.00
" ' JACOB ROCKE,
" ' *County Treasurer Lancaster County, Neb.*
" ' Countersigned:
" ' O. C. BELL,
" ' *County Clerk Lancaster County, Neb.*'

"That in compliance with the terms of said act of the legislature, complainants duly filed a plat of said lands and parcels of real estate so taken, with the commissioner of public lands and buildings, on the 1st day of June, 1887, and requesting that he should prepare a deed to be executed by the governor of the state of Nebraska, conveying said land to said companies, and that he should mark the said real estate as sold upon his records.

"That on June 10th, 1887, complainants were duly notified by the secretary of the board of public lands and buildings of the state of Nebraska, that by advice of the attorney general of the state the said commissioner of public lands and buildings, and the said board had decided that said condemnation proceedings were illegal, and that the said board should proceed to sell the said real estate regardless of said condemnation, and refused to prepare and have executed the deed that the said railroad companies were entitled to by virtue of said condemnation proceedings and the payment of the above appraisement as above stated; that complainants are unable to procure said conveyance, the said commissioner of public lands and buildings having refused to prepare the same as provided by said act, and the governor of said state having refused to execute the same, and complainants are remediless at law to save themselves from damages or to compel the conveyance of said lots and parcels of real estate condemned and paid for as aforesaid. Complainants therefore pray that a peremptory writ of mandamus may issue commanding the said defendant, Joseph Scott, as commissioner of public lands and buildings, to forthwith prepare a deed for execution by the governor, as provided by said act of the legislature, and that the governor be required to execute and deliver the same to the complainants, conveying the said lots, lands, and parcels of real estate to the complainants herein, and for such other relief as complainants are entitled to, and for costs."

There is also a stipulation of facts submitted with the petition, as follows:

" It is hereby stipulated and agreed by and between the parties hereto—1st.    That exhibit " A," hereto attached, is the original application to have the lots appraised as presented to the board of public lands and buildings by J. W. Deweese, attorney.    2d.  It is further agreed that the Chicago, Burlington & Quincy Railroad Company is a foreign corporation, and transfers its suits in court from the state courts to the federal court by reason thereof.    3d.  That Art. I. of the consolidation of the C., B. & Q. and B. & M. R. R. Co. in Neb. provides: ' Such consolidation should be effected by a sale, assignment, and transfer *which is hereby made* of the railroad, leasehold rights, and rights of action, contracts, moneys, stocks, franchises, and all other property of every description whatsoever to the C., B. & Q. R. R. Co.'

> " T. M. MARQUETT,
> . " *Atty for Plaintiff.*
> " WM. LEESE,
> " *Atty for Defendant.*"

The attorney general demurs to the application upon the ground—*First,* That the relators have not legal capacity to sue; and *second,* That the facts stated in the petition are not sufficient to entitle the relators to the relief prayed for.

The cause was argued and submitted to the court on the 6th day of July, 1887, and on the same day was examined by the court, and a decision agreed upon, the entry made by a member of the court on the consultation room docket being, " July 6th, writ denied."    The court thereupon adjourned until the 20th day of September, 1887. On the 2d day of September, 1887, the relators attempted to dismiss said cause by filing in this court the following:

" In the Supreme Court, State of Nebraska.

" The State of Nebraska, on
    relation of the Burlington &
    Mo. River Railroad Com-
    pany in Nebraska and the
    Lincoln & Northwestern
    Railroad Company,
            vs.
Joseph Scott, Com. of Public
    Lands and Buildings, and
    John M. Thayer, Governor.

" Now comes the complainant, above named, and vol-
untarily dismisses the complaint, and application for writ
of mandamus, without prejudice, this Sept. 2d, 1887.

" T. M. MARQUETT,

" J. W. DEWEESE,

"*Attorneys for Plaintiff.*"

The attorney general contends that the relator could not
dismiss the case after it had been submitted to the court,
and now asks that the attempt of the relators to dismiss be
disregarded and that judgment be rendered.

Section 430 of the code provides that, " An action may
be dismissed without prejudice to a future action. *First.*
By the plaintiff, before the final submission of the case to
the jury, or to the court, where the trial is by the court.
*Second.* By the court, where the plaintiff fails to ap-
pear on the trial. *Third.* By the court, for want of nec-
essary parties. *Fourth.* By the court, on the application
of some of the defendants, where there are others whom
the plaintiff fails to prosecute with diligence. *Fifth.* By
the court for disobedience by the plaintiff of an order con-
cerning the proceedings in the action. In all other cases
upon the trial of the action the decision must be upon the
merits."

This section was copied *verbatim* from section 372 of the
Ohio code. The proper construction of that section was be-
fore the supreme court of that state in *Beaumont v. Herrick,*

24 Ohio State, 446, in which it was held that, "Where a case is submitted to the court on a demurrer to the answer, the ground of the demurrer being that the answer does not contain a defense, and the demurrer is overruled, the plaintiff cannot, without the leave of the court, dismiss his action without prejudice. The submission of the case on the demurrer is a final submission of the case within the meaning of section 372 of the code, unless leave is obtained to reply or amend." To the same effect are the following cases: *Burlington R. R. Co. v. Sater*, 1 Clarke, 421. *Dayton v. R. R. Co.*, 11 O. S., 497. *Ditch Co. v. Bradford*, 13 Cal., 637. *Cunningham v. Milwaukee*, 13 Wis., 120. *Livergood v. Rhodes*, 20 Ind., 411. *Heinlin v. Castro*, 22 Cal., 100. *Sweet v. Mitchell*, 19 Wis., 524. *Kenedy v. McNickle*, 2 Brewster, 536. *Harris v. Beam*, 46 Iowa, 118. No case has been cited where under a statute like ours a plaintiff as a matter of right can dismiss his action after it has been submitted to the court. If he could do so litigation would become interminable, because a party who was led to suppose a decision would be adverse to him could prevent such decision and begin anew, thus subjecting the defendant to annoying and continuous litigation. The statute, therefore, limits the right of a plaintiff to dismiss to the final submission of the case. In the case under consideration the relators had set forth all the facts upon which they relied for the writ and the case was finally submitted to the court, which determined that the facts were not sufficient to entitle the relators to the relief prayed for. The motion to dismiss, therefore, was unavailing, and the judgment rendered July 6th denying the writ will now be entered of record.

This action was brought under Art. XI., Ch. 72, Comp. Stat. of 1887, which provides as follows:

Sec. 1. "Any railway company incorporated under the laws of this state, which shall have constructed its railway, or located, or hereafter may construct and locate, its

grounds for stations, machine shops, depot grounds, turn-outs, sidetracks, warehouses, and other appurtenances to a railroad, incident to its organization, across or on any state lands, as provided by section 105 of chapter 16 of the Compiled Statutes of Nebraska of 1885, may apply in writing to the board of public lands and buildings for a valuation and conveyance thereof, filing with such application a plat and description of such lands."

Sec. 2. "On such application being made the commissioner of public lands and buildings shall cause a copy of such application and plat to be forwarded to the chairman of the board of county commissioners, or supervisors of the county where such lands lie, and it shall be the duty of such county commissioners, or a majority of them, or if the county is under township organization, three of the supervisors to be designated by said board of supervisors, or a majority of such designated supervisors, to view the lands so desired to be purchased by such company, and return a true and correct value of such land, under oath, the material facts in which return shall be communicated to such board of county commissioners or supervisors, and entered of record in their proceedings."

Sec. 3. "After the foregoing proceedings have been had the applicant to purchase shall, within ninety (90) days after such appraisement, pay to the state treasurer the appraised value of such lands, and shall then be entitled to receive the deed for the same upon forwarding the proper evidence of such appraisal and receipt of the state treasurer to the commissioner of public lands and buildings; *Provided further*, That the damage accruing to any occupant or owner, or other person who may reside or have improvements on said land previous to the filing of such plat or the appraisement of such damages, shall be paid by said railroad company, such damages to be determined either by mutual agreement between the party so owning or occupying said lands and such railway company, or by appraisement as in other cases."

41

It will be observed that the right to condemn real estate for right of way under this statute is restricted to corporations organized under the laws of this state. The C., B. & Q. R. R. Co., therefore, being a foreign corporation possesses no rights under the statute. But the C., B. & Q. R. R. Co. is not entitled to the relief prayed for because of another reason.

Sec. 8, Art. XI. of the Constitution provides that, "No railroad corporation, organized under the laws of any other state, or of the United States, and doing business in this state, shall be entitled to exercise the right of eminent domain, or have power to acquire the right of way or real estate for depot or other uses until it shall have become a body corporate pursuant to and in accordance with the laws of this state."

This section absolutely prohibits a railroad corporation organized under the laws of any other state from acquiring the right of way or real estate for depot or other uses until it has become a body corporate under the laws of this state. Stronger language could scarcely be used. This question has never before been presented to this court.

In *Deitrichs v. L. & N. W. R. R. Co.*, 13 Neb., 361, the question presented was whether the lessor or the lessee was entitled to exercise the right of eminent domain, and it was held that the lessor—the owner of the road—was the party entitled to exercise the right. In that case the L. & N. W. R. R. Co. was the lessor, a corporation organized under the laws of this state.

The question was again before the court in *Gottschalk v. L. & N. W. R. R. Co.*, 14 Neb., 389, and the ruling in *Deitrichs v. L. & N. W. R. R. Co.*, 13 Neb., 361, was adhered to. The undeviating rule adopted by this court is, not to discuss the constitutionality of a statute unless the question fairly arises in the case, and in no case heretofore presented to this court has the right of a foreign corporation doing business in this state to condemn right

State v. Scott.

of way or to acquire real estate for other uses been presented. It is apparent, however, that such foreign corporation possesses no such rights. Our laws are liberal in promoting the organization of railroad companies and the construction of railways in the state. But such corporations must be under our own laws—the creature of our statutes and not of the laws of other states. It will be observed that in each application for the condemnation of the lots above described the C., B. & Q. and the L. & N. W. R. R. Co. are joined as relators. That the C., B. & Q., being a foreign corporation, is debarred from the right to the relief prayed for was conceded by one of the attorneys for that corporation on the argument. That matter may, therefore, be dismissed; but can it take as lessee of the L. & N. W. R. R.? The constitution declares that it shall not acquire right of way or real estate for depot or other uses. If it cannot acquire these, it can not take by lease or other means. It cannot do by indirection what it is absolutely prohibited from doing directly. To be entitled to relief it must organize under the laws of the state.

The demurrer to the petition is therefore sustained, and the proceedings dismissed.

JUDGMENT ACCORDINGLY.

THE other judges concur.