LAURITZ NELSON, APPELLANT, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLEE.

FILED SEPTEMBER 26, 1914.  No. 18,421.

1. "Negligence is a failure to do what reasonable and prudent persons would ordinarily have done under the circumstances and situation, or doing what reasonable and prudent persons under the existing circumstances would not have done." *Omaha Street R. Co. v. Craig*, 39 Neb. 601.

2. **Master and Servant:** INJURY TO SERVANT: NEGLIGENCE: QUESTION FOR JURY. In an action for damages against a street railway company for an injury to a person because of the alleged negligence of the company, it is for the jury to say, under proper instructions from the court, whether the acts proved constitute negligence for which the company is liable.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed.*

*John O. Yeiser*, for appellant.

*Rich, Nolan & Woodland*, contra.

HAMER, J.

In *Nelson v. Omaha & C. B. Street R. Co.*, 93 Neb. 154, is a record of what appears to have been done when this case was first presented in this court. It shows an action to recover from a master for personal injuries. The opinion in that case fails to state the facts because it was deemed unnecessary. "After the evidence on both sides had been produced, a motion to direct a verdict for the defendant was filed on account of the insufficiency of the

petition and evidence. The journal recites: 'The defendant moves that the jury be instructed to return a verdict for the defendant, and said motion is argued and submitted. Whereupon the plaintiff asks leave to withdraw a juror; and, after due consideration, said leave is by the court granted.' " From this it appears that, after the motion by the defendant was made for a directed verdict, the plaintiff asked and obtained *leave to withdraw a juror,* and this was done, and the jury discharged and the cause "set for trial anew." The defendant excepted to these orders. "Afterwards, during the same term, the defendant moved the court 'to vacate and set aside its order allowing the plaintiff to withdraw a juror and setting the case for trial. anew, for the reason that the motion of defendant to instruct the jury to render a verdict in favor of defendant had been duly argued by counsel and submitte.l to the court, as more fully appears from the record of the court, and the court was thereby without power to entertain any other motion until the said motion to instruct the jury had been either granted or denied, or to take any action whatsoever except to rule upon the said motion,' and defendant further moved that the court dismiss the action with prejudice, at plaintiff's cost. This motion was argued and submitted and taken under advisement." At the next term thereafter the motion was sustained, "for the reason that the court was about to sustain said motion to take the case from the jury when the application was made to withdraw a juror and continue the case, and the court now considers that the court was without discretion in the premises." The case was then dismissed according to defendant's motion made at the close of the testimony.

When this case was before this court at the former hearing, it was contended by the plaintiff that it was error to set aside the order granting a new trial and to dismiss the case, for the reason that the former order was within the discretion of the court, and that the evidence was sufficient to warrant its submission to the jury. The defendant, however, contended that, as there was no motion for a new trial, this court could not examine the evidence, and

that, the case having been submitted to the court by the motion to instruct, therefore the court had no power to allow the withdrawal of a juror and to grant a new trial. This court held that the district court had power, in the exercise of its discretion, to grant leave to withdraw a juror, and that, in the absence of a clear showing of an abuse of discretion, the action of the district court should be sustained; also that, since the district court at plaintiff's request exercised its discretionary power and permitted a new trial of the case, its later judgment setting aside this order and dismissing the case was erroneous. This court therefore reversed the judgment of the court below. The case now comes here for a new trial upon appeal from the judgment rendered at the second trial. We have referred to what was done at the former trial, both in the district court and in this court, because of two things for which the plaintiff contends. He maintains that "counsel for appellee convinced the lower court, regardless of his argument in briefs referred to above, that this court had closed its eyes to the question of sufficiency of the evidence, disregarding our arguments upon that question. He made the court believe that cases are sent back and forth for mere experience in practice, and that the original attempt at invasion of the province of the jury had been encouraged in the previous decision of this case." Counsel for the defendant also moved the court at the second trial, before the introduction of any new evidence, to return a verdict for the defendant upon the record and evidence *of the former trial.* The defendant also objected to the introduction of any evidence and to the statement of the case by counsel. The defendant's motion was overruled.

It is the contention of the plaintiff that the defendant furnished the plaintiff with two men to assist him in the work he was in charge of, and that these men were unable to understand the English language; that the defendant did not notify the plaintiff of that fact; that this was negligence upon the part of the defendant, the street railway company; that, by reason of such negligence, the plaintiff

received the injury complained of. It is claimed by the plaintiff that during the noon hour two of the men working under the plaintiff were taken away from him, and two other men, named Soke and Damonkos, were substituted in their places. It appears that there were four men assisting the plaintiff in the work during the forenoon; that they stopped work at noon for lunch; that at that time they had the base of the valve on which the valve was to rest in place on top of a large boiler, and a rope attached to the valve, which was being worked by a pulley and tackle over onto the base; that the thing necessary to be done was to raise the valve by the pulley and tackle to a level slightly higher than the base on which the valve was to rest, and then to push the valve, as it was suspended in the air, over onto the base. When it was in the proper position above the base, it was to be lowered onto it by the manipulation of the pulley and tackle, together with the assistance of the men who had hold of it, including the two new men, Soke and Damonkos. When the work was resumed after lunch, one of the men, named Morgensen, manipulated the pulley and tackle. It was his duty to raise the valve, and to so handle it and to assist in so handling it, as to put it down on the base. Three men, Soke, Damonkos and Ferguson, standing on one side of the valve, pushed it, while the plaintiff, who was standing on the other side, pulled it. They worked together there moving the valve and lowering it onto the base. It had to be moved a little over a foot. The evidence seems to show that the valve was very nearly to the point of its destination when Soke and Damonkos by mistake let go of it, and it came down on plaintiff's hand with great force, and crushed and permanently injured it. The valve weighed about 1,500 pounds. The accident happened about 30 minutes after Soke and Damonkos arrived.

It is claimed by the plaintiff that Soke and Damonkos let go because they did not understand the English language and misunderstood what was said to them. The evidence tends to show that the plaintiff had no knowledge of the fact that these new men who were brought to him

were unable to speak the English language. The plaintiff
directly testified that these men did not understand the
English language; that he afterwards talked to them, and
that they were unable to understand him. He testified
that he instructed them to pull the valve over, and that,
instead of pulling it over, they let go of it, and it then
fell and struck the plaintiff's hand. The valve was sus-
pended by a tackle and pulley just above the place in
which it was to be fitted on top of the boiler. The valve
was to be placed in an opening in a large steam pipe going
to all the boilers and running along on top of them. The
surface of the top of the boiler where they were at work
was about 20 by 24 feet. At the time of the accident Jim
Morgensen, Art Ferguson, John Soke and Damonkos were
all standing there on top of the boiler with the plaintiff.
The valve was to be laid on top of the boiler and the steam
pipe was thereafter to be fitted to it. The base on which
the valve was to rest was about three feet high. It and
the steam pipe had all been placed on top of the boiler.
The plaintiff was the foreman of the job. It was for the
men who assisted him to take orders from him. When
work was resumed after lunch, the plaintiff told Morgen-
sen to go up on top of the steam pipe and pull the valve
up. The plaintiff told the others to take hold of the stem
of the valve and guide it. They took hold of the valve
as it was suspended by the tackle and pulley. "Q. Then
what happened? A. They brought it up, and I told them
to push it back, and got it pretty near in place without
them letting go. * * *, Q. How far did they have to
push the valve, after they once got a hold of it? A.
About a foot. Q. And did they push it about a foot? A.
Pretty close; yes, sir." The witness testified that he was
pulling and that the helpers were pushing.

The plaintiff had been in the employ of the street rail-
way 16 or 17 years. At the time of the accident the plain-
tiff was the foreman of the steam-fitting gang. He had
held that position about nine months. Prior to that he
had been foreman of the boiler room about 14 years, and
before that he had been a fireman. About 35 men were

employed around the power house. They were oilers, firemen, helpers, and shovelers. The plaintiff testified that he did not know Soke or Damonkos, although he had seen Soke about the premises for four or five months; that there were men employed about the premises who did not speak or understand English, but he denied that he had worked with such men at the particular work in which he was engaged; that Mr. Gilbert hired the men, and that he himself did not hire any, but that he had to take such men as Gilbert hired.

The evidence fails to show an assumption of risk. The men who did not understand the English language shoveled coal or ashes. They were not in any sense skilled workmen; they were common laborers.

Gilbert testified that he got the men. He explained why they had to take the other men away from the work. He says it was to install a 3,000-horse power turbine for Aksarben. He explained that the new men, Soke and Damonkos, could not speak or understand the English language. When Gilbert was asked whether Soke could speak or understand the English language, he answered: "I didn't consider him a man that could talk the English language. Q. As to Damonkos? A. Even worse than Soke. Q. How about Morgensen? A. Could talk it fairly well. Q. Did you explain to Mr. Nelson that these men could not talk the English language? A. No, sir. * * * Q. Now, Mr. Gilbert, did you know of any one of your employees who could not understand the English language, that had ever, previous to that time, been put to work on important work like the fixing of this valve?" To this there was an objection, which the court sustained. "Q. What kind of work, Mr. Gilbert, before this particular transaction, did men who could not understand the English language engage in for the company?" To this there was another objection, which the court sustained. Counsel for the plaintiff then offered to prove that the men who could not speak and understand the English language were men who were engaged in shoveling coal and ashes, and that they were never employed at any other kind of

employment.   To this there was another objection, which, the court sustained.

If there was to be an issue tried as to whether there was an assumption of risk by reason of the fact that the plaintiff voluntarily worked with men in the line of his employment who were unable to speak and understand the English language, the court should have permitted it to be tried.

Mr. Gilbert testified: "We have what is known as coal unloaders and conveyers—men that unload the coal from the cars, and take care of the coal and ashes—common labor."   Mr. Ferguson testified concerning Soke and Damonkos: "We were pushing it over and we got it pretty near over where it belonged and they let loose."   There was then the inquiry as to whether they both let loose, and he said they did.

The motion at the close of the testimony made by the defendant reads: "Comes now the defendant and moves the court to instruct the jury to return a verdict in favor of the defendant on the ground that there is not evidence sufficient to justify a verdict in favor of the plaintiff."   The motion was sustained, and judgment rendered in behalf of the defendant.   We have carefully read the evidence contained in the bill of exceptions.   We are of the opinion that there was evidence sufficient to require a submission of the case to the jury.

"Negligence is a failure to do what reasonable and prudent persons would ordinarily have done under the circumstances and situation, or doing what reasonable and prudent persons under the existing circumstances would not have done."   *Omaha Street R. Co. v. Craig,* 39 Neb. 601.

"In an action for damages against a railroad company because of the injury to property occasioned by its alleged negligence, it is for the jury to say, under proper instructions from the court, whether the acts proved constitute negligence for which the company is liable."   *Whitlow v. Missouri P. R. Co.,* 94 Neb. 649.

" 'Ordinary care' in the selection and retention of serv-
ants and agents requires that degree of diligence and pre-
caution which the exigencies of the particular service rea-
sonably require, and is such care as, in view of the conse-
quences that may result from negligence on the part of
employees, is fairly commensurate with the perils or dan-
gers likely to be encountered." *Emery v. City of Tacoma,*
127 Pac. 851 (71 Wash. 132).

"Where the negligence relied on in an action by an
employee for injuries was that the master had employed
a Mexican of a low order of intellect, and who could not
understand the English language, as a co-laborer with
plaintiff, and the evidence was conflicting, the question of
whether such co-laborer understood the directions given
him by defendant, and whether his failure to obey them,
which resulted in plaintiff's injury, was owing to careless-
ness should have been submitted to the jury." *B. Lantry
Sons v. Lowrie,* 58 S. W. (Tex. Civ. App.) 837.

"In this, a personal injury case, held, that whether or
not the master negligently employed incompetent serv-
ants was, under the evidence, a question for the jury."
*Francoeur v. Gribben Lumber Co.,* 115 Minn. 200.

"A servant is under no duty to examine into the char-
acter of servants employed to work with him, and he as-
sumes the risk of their unfitness only where he is shown
to have knowledge of it. Proof of notorious unfitness of
fellow servant will not alone establish such knowledge on
his part." *Texas & P. R. Co. v. Johnson,* 89 Tex. 519.

"It is the duty of the master to his servant to exercise
a reasonable care in furnishing an adequate number of
co-laborers to assist in the performance of work of a haz-
ardous nature." *Supple v. Agnew,* 191 Ill. 439.

"A complaint alleging the incompetence of plaintiff's as-
sistant, by reason of deafness, a fact known to the defend-
ant and not known to the plaintiff, and that plaintiff was
injured by reason of stopping to give a second warning to
protect the assistant and property in his care, states a
cause of action." *Harding v. Ostrander Railway & Timber
Co.,* 64 Wash. 224.

The evidence was sufficient to require a submission of the case to the jury. For that reason, it was error to direct a verdict.

The judgment of the district court is

REVERSED.

ROSE, FAWCETT and SEDGWICK, JJ., not sitting.