## COLON v. CLYDE STEAMSHIP CO.
### No. 4564.

Circuit Court of Appeals, Third Circuit.
July 28, 1931.

Rehearing Denied Nov. 4, 1931.

Archie Elkins, of Jersey City, N. J., for appellant.

J. A. Hartpence, of Jersey City, N. J., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal from a judgment entered upon a directed verdict in favor of the defendant in an action brought in the District Court for the District of New Jersey to recover damages for personal injuries alleged to have been sustained through the negligence of the defendant. There was a trial by jury. The testimony for the plaintiff tended to show the following facts:

The plaintiff was employed by the Central Railroad Company of New Jersey as a member of the crew of the tug Freehold. On

December 14, 1929, the Freehold was engaged in taking carfloats into a slip lying between Piers 38 and 39 of the North River in the city of New York. The width of the slip between the piers was from 175 to 200 feet. There were several barges lying two abreast along the side of Pier 38. The Freehold had a float in tow which was to be tied up to Pier 39. It was upon that float that the plaintiff was on duty. The Freehold successfully pushed the float into the slip, and alongside the pier. The master of the Freehold had ordered the plaintiff to carry a line from the float onto Pier 39 to secure the float to the pier.

The tug Atwood, owned by the defendant, the Clyde Steamship Company, about that time was maneuvering to come out of the slip with four barges, two abreast. In order to do so, it was necessary for it to navigate its tow between the barges tied up to Pier 38 and the Freehold and its float lying alongside of Pier 39. The Atwood attempted to back out with its tow without giving the slip signal, as required by article 18, Rule 5 of the Inland Regulations (33 USCA § 203). The Freehold gave the danger signal but the Atwood, disregarding the Freehold's signal, continued to back out. One of the barges towed by the Atwood struck the float from which the plaintiff was climbing, causing his fingers to be squeezed between the float, upon which he was employed, and the string piece of the dock. He claimed damages for the consequent injury.

In the plaintiff's complaint, it is alleged: "The negligence of the defendant, through its agents and servants, consisted in this: Failure to use reasonable care to manage, navigate, and pilot the said tug known as 'Atwood', so that the same would not come in contact with the float upon which plaintiff was employed, and failure to use reasonable care in the management of said tug, but on the contrary, the same was caused to strike the car float, upon which plaintiff was employed, with such force and violence as to cause injury to the plaintiff."

The testimony on behalf of the plaintiff did not sustain the allegation that the Atwood was caused to strike the car float, thereby causing injury to the plaintiff. The master of the Freehold originally testified that the Atwood came into contact with the starboard corner of the float. On cross-examination, however, he testified that it was the barges

towed by the Atwood that struck the float, and on redirect examination, he testified as follows:

"Q. What actually struck your float, the back part of the barge, the 'Atwood'? A. The back part of the barge, not the tugboat, not the 'Atwood' but the barge; the 'Atwood' is a tugboat propelled by steam.

"Q. Did that strike your float? A. No, sir.

"Q. What did? A. The barges that he was trying to pull out of the slip."

Upon this failure of the plaintiff to sustain the specific charge of negligence set out in his complaint, and the plaintiff's testimony being closed, the attorney for the defendant moved for a directed verdict. Vigorous objection and extended argument by the attorney for the plaintiff ensued. After hearing both sides fully, the court granted the motion. The plaintiff's attorney then moved that he be allowed to take a voluntary nonsuit, contending that, while the court had allowed the defendant's motion, he had not yet directed the jury to return a verdict for the defendant.

■ The question raised is one of practice and procedure in which the federal courts follow that of the courts of the state in which the suit is brought. Rev. St. § 914 (28 USCA § 724).

■ The Court of Errors and Appeals of the state of New Jersey in the case of Allgeier v. Erie Railroad Co., 100 N. J. Law, 89, 124 A. 769, 770, in its opinion, said: "When the plaintiff in the case at bar was confronted with the motion to direct a verdict in favor of the defendant, she had two courses open to her, either to submit to a voluntary nonsuit or resist the motion. She chose the latter course, and after the judge decided to direct the verdict against her, and thus controlled the action of the jury, it was too late for her to elect to submit to a voluntary nonsuit. The plaintiff had no right to speculate upon the result, and, after defeat, resort to a course which would frustrate the ruling of the court against her. The defendant was then entitled to the fruits of its motion to direct."

Our conclusion is that the trial judge was not in error in denying the motion for an involuntary nonsuit, and in entering judgment upon the directed verdict.

**Judgment affirmed.**