**IOWA–NEBRASKA LIGHT & POWER CO. v. DANIELS et al.**

No. 9521.

Circuit Court of Appeals, Eighth Circuit.

Jan. 31, 1933.

Rehearing Denied March 13, 1933.

Raymond M. Crossman, of Omaha, Neb. (Alfred C. Munger and John L. Barton, both of Omaha, Neb., on the brief), for appellant.

Wymer Dressler, of Omaha, Neb., for appellees.

Before STONE, VAN VALKENBURGH and BOOTH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

In the District Court of Cass county, Neb., appellee Daniels brought suit against appellant and appellee Missouri Valley Pipe Line Company to recover for personal injuries alleged to have been sustained. The pipe line company was the employer of the plaintiff below from which plaintiff had already received compensation under the Workmen's Compensation Law of Nebraska (Comp. St. Neb. 1929, § 48-101 et seq.), and was made a party to the suit, as required by law, in order that it might be awarded its part of any recovery plaintiff might make against the power company. The cause was subsequently removed to the District Court of the United States for the District of Nebraska. Upon trial, and after conclusion of plaintiff's testimony appellant moved for a directed verdict, and the following proceedings were had in the absence of the jury:

"The Court: It is not very clear to me in this case where the plaintiff has any cause of action against the Power Company. I have read the briefs handed to me last night very carefully, and it seems there is no proof of negligence on the part of the high line company at all as I see it. That is the way it

looks to me now, but I will hear you gentlemen.

"Mr. Dressler: It appears to me, Your Honor, here is this high line company engaged in the business of transmitting this dangerous agency and they had control of the place where they would place their line, had absolute control of that and they put it on the south border of the city limits. Now, the transmission of electricity, the Court knows judicially and as a matter of common knowledge of those skilled in the science, that these transmission lines carrying this high voltage do flash those electric flashes between the wires—

"The Court: I don't know that.

"Mr. Dressler: Perhaps that is true and perhaps I don't know it, but the books recognize it and that is recognized in the science and it has been proven here. Mr. Rea says that short circuits occur between the wires whenever there is a surge in the current.

"The Court: Did he say that sparks passed between the wires?

"Mr. Dressler: Yes, he recognized that fact and that is the reason they put on the automatic circuit breakers—

"The Court: If he said they do occur and those sparks are liable to occur at any time—

"Mr. Dressler: Oh, yes, he testified to that and that is the reason they install these automatic circuit breakers— * * *

"Mr. Crossman: May it please the Court, of course the essential element of this case is proof of negligence. What proof of negligence has there been submitted up to this point in this case? It is admitted that the pipe line border station and these high tension voltage wires—that the pipe line station there is not built under them; the high transmission wires are north of them; they are not in proximity—

"The Court: Did it appear how many feet away out of line of the wires the station is?

"Mr. Dressler: Thirteen feet.

"Mr. Crossman: Thirteen feet?

"The Court: Thirteen feet to the north and then the pole is 60 feet and eight feet in the ground—

"Mr. Dressler: I offered to prove from the witnesses here that the lowest wire was only about 15 feet from the ground, and Your Honor said, on Mr. Crossman's statement that he had the exact measurements, that you would not hear that testimony, but I think I am entitled to that proof, that so

far as the record shows at this time, they were only 15 feet—

"Mr. Crossman: My position is that they are not in such proximity— * * *

"Mr. Dressler: Just a few words, Your Honor, in reply to Mr. Crossman: * * *

"The Court: Call in the jury. (Jury herein returned into court).

"The Court: The plaintiff in this case, gentlemen of the jury, charges negligence against the defendant Power Company in the following particulars; He says the Company was negligent in permitting and inducing the building of a border station in such close proximity to the high voltage wires of the Power Company, with the knowledge that said wires would be liable to ignite escaping gas from the border station, in the usual and ordinary operation thereof. I find the evidence insufficient to show that such was the fact—

"Mr. Dressler: If Your Honor please, I would like to dismiss without prejudice.

"The Court: You may do so. The case will stand dismissed without prejudice and the jury excused from further service in the case.

"Mr. Crossman: If Your Honor please, I made no objection and had no opportunity to make an objection to the motion—

"The Court: That is correct. And let the record show the jury is now passing out of the room. You may proceed now, Mr. Crossman.

"Mr. Crossman: May it please Your Honor, after the request was made by Mr. Dressler, as attorney for plaintiff, for leave to dismiss without prejudice Your Honor's reply and ruling was made so quickly I had hardly no opportunity at all to object.

"The Court: That is the fact, I replied so quickly, no matter what the intention of counsel for defendant may have been in the matter, they had no opportunity to object before I spoke.

"Mr. Crossman: I think, Your Honor, that counsel had fully submitted his case and Your Honor, at the time, was engaged in rendering your judgment upon the motion. The case had been fully submitted after an hour and a quarter of previous argument.

"The Court: That is true, there had been an hour and a quarter of argument on the motion, and the record may so show.

"Mr. Crossman: And counsel on both sides had completed their arguments.

"The Court: That is true, counsel on both sides had completed their arguments.

"Mr. Crossman: And the Court had requested the jury be called back into the box.

"The Court: That is true and they had returned and were sitting in the box.

"Mr. Crossman: And Your Honor was commencing to instruct the jury and was discussing the first ground of negligence and had just stated that you found no evidence to sustain the first ground of negligence.

"The Court: Whatever I said the record will show.

"Mr. Crossman: And the request by counsel for plaintiff, for leave to dismiss without prejudice, came after there had been full and complete submission of this case and Your Honor had decided it, and I except to the order as entered.

"The Court: The exception is allowed."

Directly thereafter appellant filed an amended motion to vacate the court's order dismissing plaintiff's action without prejudice, to sustain appellant's motion for a directed verdict at the close of plaintiff's testimony, to dismiss plaintiff's action with prejudice, and to enter judgment for appellant. This motion was denied, and judgment was entered "that this cause be, and is hereby dismissed, without prejudice, at costs of the plaintiff herein." An exception was allowed. From this judgment order appellant appeals. But two errors are assigned, both invoking the following stated proposition of law: "Under the Nebraska Statute and practice in courts of record of Nebraska, application by plaintiff to dismiss his action without prejudice, after final submission of a defendant's motion for a directed verdict, comes too late and must be denied."

■ The first question presented is whether the order challenged is appealable.

The plaintiff below took a nonsuit, which has been defined as "any judgment of discontinuance or dismissal whereby the merits are left untouched." Mason v. Kansas City Belt Railroad Company, 226 Mo. 212, 125 S. W. 1128, 1131, 26 L. R. A. (N. S.) 914. Such a judgment has been uniformly held to be so far final as to be appealable. In Connecticut Fire Ins. Co. v. Manning et al., 177 F. 893, this court held that "a judgment of nonsuit, though not res judicata of the merits of the controversy between the parties, is nevertheless a final judgment, reviewable on writ of error." As Judge Munger, speaking for the court, said the fact "that the plaintiffs

are not thereby estopped from bringing a new action founded on the same subject-matter, does not prevent the judgment of nonsuit being a final judgment of the Circuit Court with respect to the then pending case." See, also, Chicago, Milwaukee & St. Paul R. Co. v. Metalstaff (C. C. A. 8) 101 F. 769; Massachusetts Fire & Marine Ins. Co. v. Schmick (C. C. A. 8) 58 F.(2d) 130; Southern Pac. Co. v. Kelley (C. C. A. 7) 187 F. 937, 938, and Cybur Lumber Co. v. Erkhart (C. C. A. 5) 247 F. 284.

■ We turn next to the question raised by the assignments of error. It may be accepted that the District Court for the District of Nebraska is governed by the statute existing, and the practice prevailing in that state, in granting or denying the application of a plaintiff to dismiss his action without prejudice. 28 USCA § 724; Chicago, M. & St. P. R. Co. v. Metalstaff (C. C. A. 8) 101 F. 769; Rhode v. Duff et al. (C. C. A. 8) 208 F. 115, 118; Spies v. Union Pac. R. Co. (C. C. A. 8) 250 F. 434; Colon v. Clyde Steamship Co. (C. C. A. 3) 52 F.(2d) 845.

Section 20-601, Comp. St. Neb. 1929, reads thus: "An action may be dismissed without prejudice to a future action: First. By the plaintiff, before the final submission of the case to the jury, or to the court where the trial is by the court; Second. By the court where the plaintiff fails to appear at the trial; Third. By the court for want of necessary parties; Fourth. By the court on the application of some of the defendants where there are others whom the plaintiff fails to diligently prosecute; Fifth. By the court for disobedience by the plaintiff of an order concerning the proceedings in the action. In all other cases on the trial of the action the decision must be upon the merits."

It becomes necessary to examine the controlling decisions, interpretive of this statute, as bearing upon the question at issue. We take up the Nebraska cases in their order.

In State v. Scott, 22 Neb. 628, 36 N. W. 121, 126, it was held generally that a plaintiff cannot dismiss without prejudice as a matter of right after the case has been submitted. Here the court's decision had been rendered before the application to dismiss was made. The court said: "No case has been cited where, under a statute like ours, a plaintiff as a matter of right can dismiss his action after it had been submitted to the court. * * * The statute, therefore, limits the right of a plaintiff to dismiss to the final submission of the case."

In Sharp v. Brown, 34 Neb. 406, 51 N. W. 1030, 1031, the cause had been submitted to the district court, briefs to be furnished within sixty days. Afterwards the plaintiff filed a motion to dismiss, which the court declined to entertain. The Supreme Court held this was not error, saying: "A plaintiff may dismiss his cause without prejudice, where no affirmative relief is sought by the defendant at any time before it is finally submitted to the court. * * * But after a cause has been submitted to the court, the power of the plaintiff to dismiss without prejudice is at an end."

State v. Hazelet, 41 Neb. 257, 59 N. W. 891, follows State v. Scott, supra. Bee Building Co. v. Dalton, 68 Neb. 38, 93 N. W. 930, 4 Ann. Cas. 508, comes next, and is relied upon largely by both parties to this appeal. The case had been submitted in the sense that plaintiff had rested and defendant had moved for a directed verdict. The trial court sustained the motion, and plaintiff asked that the case be dismissed without prejudice and his request was granted. On appeal to the Supreme Court the judgment of dismissal was reversed. The syllabi in this case concisely and comprehensively disclose the basis of the Supreme Court's action:

"When a case has been submitted upon a demurrer to the evidence, plaintiff's absolute right to dismiss without prejudice is lost.

"The district court may, in the just exercise of discretionary power, permit plaintiff to dismiss his case after it has been finally submitted to the court or jury.

"But where the discretionary power of the court is not invoked, and the application to dismiss after final submission is made and allowed as a demandable right, the order of dismissal will not be upheld unless a denial of the application would amount to an abuse of discretion."

The precise point to this ruling is thus further expressed in the body of the opinion: "The discretionary power of the district court to set aside a submission and receive further evidence, or to postpone the trial, or even to permit a dismissal of the case, is not doubted; but there is nothing in the present record to indicate that there was any just ground for the exercise of such power, or that there was any attempt to bring it into action. The court was evidently of the opinion that, the peremptory instruction not having been yet read to the jury, the right of plaintiff to dismiss was absolute. This was an erroneous conception, and it led to a wrong result."

The syllabus in Fronk v. J. H. Evans City Steam Laundry, 70 Neb. 75, 96 N. W. 1053, reads thus: "Where a case has been submitted upon a demurrer to the evidence, plaintiff's absolute right to dismiss without prejudice is lost."

In this case the motion to direct a verdict was apparently argued at length, and, upon the court announcing its intention to direct a verdict for the defendant, the plaintiff moved to dismiss without prejudice. This was denied by the trial judge, and his ruling was affirmed.

In Nelson v. Omaha & Council Bluffs Street Railway Company, 93 Neb. 154, 139 N. W. 860, the syllabus significantly reads as follows: "'The district court may, in the just exercise of its discretionary power, permit plaintiff to dismiss his case after it has been finally submitted to the court or jury.' Bee Building Co. v. Dalton, 68 Neb. 38, 93 N. W. 930, 4 Ann. Cas. 508."

There the defendant moved that the jury be instructed to return a verdict for the defendant. This motion was argued and submitted. Thereupon, plaintiff asked leave to withdraw a juror and, after due consideration, the motion was granted. The juror was withdrawn, the jury discharged, and the case set for trial anew. Defendant excepted. Afterwards, during the same term, defendant moved the court to vacate these orders, on the ground that the motion for a directed verdict had been duly argued and submitted to the court, and that the court was, therefore, without power to take any action whatsoever except to rule upon the said motion. Defendant further moved that the court dismiss the action with prejudice and at plaintiff's costs. This motion was argued, submitted, and taken under advisement. At the next term it was sustained on the ground that "the court was about to sustain said motion to take the case from the jury when the application was made to withdraw a juror and continue the case, and the court now considers that the court was without discretion in the premises." The case was then dismissed on defendant's motion. This judgment was reversed by the Supreme Court, and, in the course of its opinion, the decision in Bee Building Company v. Dalton was considered and distinguished. It is pointed out that in that case the motion to dismiss without prejudice was insisted upon "as a matter of right," and was granted with that "erroneous conception." "It was within the discretion of the court (in the Bee Case) at that stage of the trial to allow the dismissal to be made." Turning then to the case before

it, the opinion in the Nelson Case has this to say: "The argument in defendant's motion, based upon the alleged want of power to act until the motion to instruct had either been granted or denied, is fallacious. * * * We are of the opinion that the court had power, in the exercise of its discretion, to grant leave to withdraw a juror, and that, in the absence of a clear showing of an abuse of discretion, its action should be sustained."

It then points out that the court, at plaintiff's request, exercised its discretionary power in granting a new trial of the case, and that no abuse of its discretion had been affirmatively shown. This position is reviewed and approved in the later case of Nelson v. Omaha & C. B. Street Railway Company, 96 Neb. 857, 148 N. W. 908, decided September 26, 1914.

Knaak v. Brown, 115 Neb. 260, 212 N. W. 431, 51 A. L. R. 237, recognizes the general rule that the granting or refusal of leave to dismiss, discontinue, or take nonsuit is a matter of practice to be exercised at the discretion of the court with reference to the rights of both parties. The syllabus in Sharp v. Brown, supra, presumably published with the court's approval, reads thus: "After a cause is submitted to the court, the right of the plaintiff to dismiss the cause without prejudice, *without leave of court,* is at an end." (Italics ours.)

This is a significant limitation of the unqualified language of the opinion as quoted above.

In Rhode v. Duff, 208 F. 115, 118, this court held that "under the Nebraska practice, a motion by plaintiff to dismiss, made after he has rested his case and a motion for a directed verdict has been argued, comes too late," based upon Bee Building Company v. Dalton, supra. In this case the motion to dismiss was denied. This case was correctly decided and is not in conflict with the decision of the Supreme Court of Nebraska in Nelson v. Omaha & C. B. Street Railway Company, 93 Neb. 154, 139 N. W. 860. In the Rhode Case the power of the court in the exercise of its discretion to grant a dismissal without prejudice was not in issue. If, in the case before us, the court had denied the application to dismiss, no abuse of discretion could have been successfully urged upon the face of this record.

In our opinion the rule prevailing in Nebraska is not obscure. The privilege of dismissal without prejudice is not demandable as of right after a case has been submitted to court or jury, whether upon demur-

rer to the evidence, motion for directed verdict, or generally upon conclusion of the evidence; but may be granted by the court in the exercise of its discretion; and, in the absence of a clear showing of abuse of discretion, such action should be sustained. Without doubt the courts should be alert to prevent defeated litigants from arbitrarily abandoning their cases for the obvious purpose of suing again, thus harassing defendants, and committing unwarranted waste of public money; but the court's discretion in the premises is essential to the rights of both parties. In the case before us no abuse of this discretion has been shown, either affirmatively or inferentially. The record does not show that the application to dismiss without prejudice was presented as a demandable right. The trial judge had before him the evidence in the case, and the arguments of counsel upon the motion to direct a verdict. Presumably he thought the ends of justice would best be subserved by permitting plaintiff to dismiss without prejudice, and exercised his discretion accordingly.

The judgment should be and is affirmed.