Fronk v. Evans City Steam Laundry Co.

MAGGIE FRONK, A MINOR, BY MICHAEL FRONK, HER NEXT FRIEND, V. J. H. EVANS CITY STEAM LAUNDRY COMPANY.

FILED OCTOBER 7, 1903.    No. 13,100.

1. **Dismissal:** DEMURRER TO EVIDENCE. Where a case has been submitted upon a demurrer to the evidence, plaintiff's absolute right to dismiss without prejudice is lost. *Bee Building Co. v. Dalton,* 68 Neb. 38.

2. **Master and Servant:** NEGLIGENCE. Before recovery can be had against an employer based on the ground of negligence in not informing the employee of the danger attending the operation of a machine and instructing her how to avoid injury thereby, it must appear that the injury complained of occurred because of the want of such instruction. If it fairly appears that the injury complained of did not occur from want of knowledge of how the machine should be operated, but was incurred from causes which could not be foreseen or anticipated, it can not be imputed to the neglect of the master to give proper instructions.

3. **Question for Jury.** Whether a guard rail attached to a mangle for the purpose of protecting the hand of the operator from being caught and drawn into the machine was properly attached and placed in position, is a question for the jury under the evidence.

ERROR to the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Reversed.*

*Constantine J. Smyth* and *Ed P. Smith,* for plaintiff in error.

*Charles J. Greene, Ralph W. Breckenridge* and *J. C. Kinsler, contra.*

DUFFIE, C.

The plaintiff in error is a minor of the age of fifteen years, and brought this action by her father as her next friend.   On May 5, 1902, she was employed by the defendant in error and placed in charge of the forewoman with instructions to put her to work.   The first work assigned her was that of laying out wet clothes.   She continued in this employment on Monday and Tuesday, and on Wednesday the forewoman put her to work feeding a

machine called a mangle, which is used for ironing clothes. This mangle is operated by steam and consists, as we understand, of four large rollers which revolve over a heated steam-chest. It is about eight feet wide. It has a table in front which is covered with a brass sheet. Above this table, running the entire length of the machine, is a guard. Between the guard and the table is the aperture through which the clothes are fed to the machine. The rollers revolving toward the operator, take hold of the clothes and pull them through to the other end, thus drying and smoothing them. The purpose of the guard is to prevent the hand of the operator from being dragged between the roller and the heated steam-chest. It is adjustable and can be raised or lowered by the engineer but, as we gather from the record, the operator has nothing to do with its adjustment. On Thursday afternoon, a day and a half after plaintiff commenced work on the machine, her right hand was caught in a double roller towel which she was passing through the machine, and dragged under the guard and between the steam-chest and the roller, and there crushed and burned so as to render amputation above the wrist joint necessary. At the time of the accident, she was standing at the right or east end of the machine. At that time, the guard at the left or west end of the machine was about one-half inch above the table, and at the east end, where plaintiff was working, the evidence tends to show that the guard was from an inch to an inch and a half above the table. The evidence also tends to show that no article was fed to the machine thicker than a double towel, and that it was not necessary that the guard should be placed more than from one-eighth to a half inch above the table. The petition alleges negligence on the part of the defendant in error in two particulars: (1) In not instructing plaintiff how to perform the duties of the employment in which she was engaged at the time of the injury; (2) in the adjustment of the guard on the machine in which plaintiff was injured. At the close of the plaintiff's testimony the court, on motion of defendant, instructed the jury to return

Fronk v. Evans City Steam Laundry Co.

a verdict for the defendant. The motion to direct a verdict was apparently argued at length and, upon the court announcing its intention to direct a verdict for the defendant, the plaintiff moved to dismiss without prejudice. This was denied and is now alleged as error. Plaintiff, in her brief, cites authorities to the effect that there can be no final submission of the case to the jury until all questions of law have been disposed of by the court, instructions and papers pertaining to the case actually delivered to the jury, and until they are authorized, without further interposition or control of the court, to proceed to a judicial examination of the issues submitted to them. In view of the holding of this court in *Bee Building Co. v. Dalton,* 68 Neb. 38, it is not necessary to spend time on that branch of the case. It is there said:

"When a case has been submitted upon a demurrer to the evidence, plaintiff's absolute right to dismiss without prejudice is lost." Also: "To permit a party to dismiss under such circumstances is, in substance, to grant him a new trial after he has been fairly defeated and to deprive his adversary of the fruits of a fairly won victory. It is contrary to good sense and sound policy to allow a party to take his case from one court to another until fortune favors him with a judge who is willing to accept his view of the law or his construction of the evidence."

Neither do we think that the plaintiff's contention that the defendant's failure to instruct her how to perform the duties of her employment, and to give her warning of danger to be apprehended from the operation of the machine, can be used to work a reversal of this case. Plaintiff's own testimony is to the effect that she watched the other girls at work upon the machine and that she fed it just as they did, and, in answer to a question as to how her hand got caught, she said:

"All I know I was feeding that towel; I was trying to pull the wrinkles out of it, and the thumb got wound some way in the towel, and pulled it right in with the towel; that is all of it."

The following is a part of her examination:

Q. Your hand got wrapped up in some way or other in the towel and you could not get it out?

A. Yes, sir.

Q. And this time you did not have hold of the towel as you usually did?

A. No, sir.

Q. Nor the way Miss Black usually did?

A. No, sir.

Q. You did not have hold of it the way she usually fed it, that time?

A. No, sir.

Q. If your hand had not got tangled in the towel you could have taken it away couldn't you?

A. Yes, sir.

Q. And you would not have been hurt would you?

A. No, sir.

Q. So that it was not any lack of knowledge on your part that kept you from taking your hand away, was it?

A. Why, I don't know.

Q. Was it because you did not know, or was it because the towel held you, that you did not take your hand away?

A. It was because the towel held my hand in it.

Q. So if the towel had not held you, what you knew about the machine would have permitted you to take your hand away, wouldn't it?

A. Yes, sir.

It is evident from this examination of the plaintiff that it was not lack of knowledge on her part as to how the machine should be fed that caused the injury, and any information or instruction which might have been given her of the manner of feeding the machine could not in the least tend to obviate the injury which she received. The law does not cast upon the employer the burden of anticipating an accident of a particular kind, nor, as in the case at bar, of foreseeing how it might happen that the thumb of one of his employees might become entangled in a torn towel and drawn into the mangle. The plaintiff herself has

stated repeatedly that she did not know how her thumb became entangled, and, if she does not know, the law is not so unreasonable as to cast upon the employer the duty of telling her in advance how to avoid an occurrence which she can not explain after it has taken place. We are clear that plaintiff has not established any fact which tends to show that the injury occurred through the neglect of the defendant to instruct her in the operation of the machine.

Passing now to the complaint made that the guard was improperly adjusted, we are of the opinion that this was a question which should have been submitted to the jury. It appears without contradiction that the guard was placed on the machine for the sole purpose of protecting the operator and of keeping her hand from coming in contact with the rollers. As before stated, the evidence tends to show that a space of one-quarter to one-half inch was sufficient through which to feed any of the clothes that were passed through this mangle. If there had been no guard, the danger of feeding the mangle would have been apparent to the operator, and she would have taken the risk of such open and apparent danger if she continued in the employment. As said by the supreme court of Oregon in *Stager v. Troy Laundry Co.*, 38 Ore. 480, 53 L. R. A. 459, a case very similar to the one under consideration:

"The authorities appear to be uniform and conclusive that, where a machine similar to the Wendell Annihilator in principle is operated without a guard plate, the operator assumes the risk; for in such case the method of operation is known, and the peril patent. In the case at bar there was a guard plate, which was evidently designed to lessen, if not to obviate, the danger incident to feeding fabrics within the aperture between the rollers, and, if properly adjusted, would, no doubt, have afforded some protection, and it was the duty of the master to see that it was properly adjusted."

In *Swift & Co. v. Holoubek*, 60 Neb. 784, the contention of the plaintiff was that a certain shield was improperly and negligently constructed, and was attached to the ma-

chine in such a manner as to make the space between the knives and the revolving drum an inch or more and sufficient to permit the hand to pass into the rapidly revolving knives; when the proper construction would have allowed but an eighth to a quarter of an inch space, and thus prevented the possibility of the happening of the injury. In the opinion it is said:

"The shield was evidently for the purpose of protecting the operators of the machine from contact with the revolving knives, and, under plaintiff's theory, should be placed so near the drum as not to permit the hand to slip thereunder and against the knives or scrapers. * * * The issue we regard as purely one of fact, and upon which there is a conflict of the evidence, rendering the question one properly in the province of the jury for its determination."

The same views were expressed by the court on a reexamination of the case, the opinion being found in 62 Neb. 31; and these cases, we think, are an authoritative declaration that where the master has placed a guard to protect his employee and to prevent his hand from being drawn into the machine, and where the guard when properly placed will have this effect or will tend to prevent accidents, it is his duty to see that the guard is properly adjusted and whether it be so or not is a question for the consideration of the jury.

We think, therefore, that the court erred in not submitting the question of the proper adjustment of the guard to the jury, and for this error we recommend a reversal of the judgment and that the cause be remanded for a new trial.

POUND, C., concurs.

KIRKPATRICK, C. I concur in the result, but not in the rule announced in paragraph 2 of the syllabus.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.