## THE WESTERN MARYLAND RAILWAY COMPANY, A BODY CORPORATE,

*vs.*

## JAMES HOWARD SANNER.

*Common carriers*: *railroads in interstate commerce; liability to
employees; negligence; interstate commerce; "accidents";
brakeman jumping from moving train;
assumption of risk.*

Under Chapter 149 of the Acts of Congress of 1908, for a
common carrier by railroad to be liable to an employee for
accident or injuries, it must be shown that the common carrier
was guilty of some act of commission or omission that, at com-
mon law, would have been sufficient to require the submission
of the case to a jury. p. 583

A brakeman, intending to throw a switch as the train ap-
proached a siding, jumped from a place on the engine and, in
so doing, his leg gave way as he touched the ground, and he
fell, permanently injuring one of his ankles; there was no evi-
dence of negligence on the part of the railroad, excepting that
on a return trip the conductor noticed a deep hole or washout
at or near the spot where he fell; but there was no evidence
that he fell in the hole or because of it: *Held,* that a prayer
taking the case from the consideration of the jury was correct.
p. 585

It was further *held,* that the injury must be considered in the
nature of an accident, the risk of which the brakeman assumed
when he entered the employment of the railroad. p. 585

*Decided June 26th, 1917.*

Appeal from the Superior Court of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER and STOCKBRIDGE, JJ.

*George R. Gaither* and *George P. Bagby*, for the appellant.

*George Moore Brady* (with whom were *William Milnes Maloy* and *William Joseph Tewes* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This suit was brought to recover damages for personal injuries resulting to the appellee, under the following circumstances: James H. Sanner was a brakeman on a passenger train of the appellant, running from Cumberland, Maryland, to Elkins, West Virginia. On the 13th of July, 1914, he was on a west bound train, and as the train approached a place known as Neff's Siding, where it was to meet an east bound train, the plaintiff took a position on the locomotive in order to be ready to jump off, and throw the switch, which would enable his train to pass into the siding. As the place came in sight, it was seen that the east bound train had already arrived at the point, and that the switch was open for the west bound train to enter. The engineer accordingly instead of bringing his train to a stop before reaching the switch, ran past it, and at a point some thirty or forty feet beyond, the plaintiff jumped from the locomotive, and one of his legs gave way under him. He picked himself up and continued to discharge his duties for the remainder of the run.

By the next morning his knee had swollen considerably, and gave him pain. He returned to Cumberland, where he was visited by the physician of the company, who treated the

case as one of a sprain. Little or no improvement taking place he was later sent to Baltimore, where an X-ray was made of the injured joint. This showed that "one of the ligaments in the joint had been torn and a little, tiny piece of bone was pulled off with it."

This amounted to a permanent injury, incapacitating the plaintiff from further work as a railroad man, an occupation which he had followed for a number of years.

The theory on which the suit was brought, was that it fell within the provisions of the Act of Congress of 1908, Chapter 149.* Section 1 of that Act provides that every common carrier by railroad engaged in interstate commerce, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, where the injury results "in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves or other equipment."

It is, therefore, clear, that not all cases of accident and injury are included within the provisions of the Act, but only those in which negligence is the cause from which the injury results.

That it was not intended to apply to all cases is also made clear by the title of the Act, which is "An Act relating to the liability of common carriers by railroad to their employees in certain cases."

In order to determine whether a certain case is within the provisions of the Act, it is first necessary to ascertain whether there has been actionable negligence on the part of the railroad. Nowhere in the Act is any definition of negligence to be found. Therefore, the term must be taken to mean such act of commission or omission, as would at common law have been sufficient to entitle the case to be submitted to a jury.

———

*U. S. Statutes at Large, vol. 35, part 1, ch. 149.

That negligence in this case is claimed to have been the failure of the railroad to provide a safe approach to the switch for the use of the trainmen whose duty it might be to open or close the switch lever.

The accident happened about six o'clock P. M., or an hour and a half before sunset, when it must have been perfectly light. The immediate cause of the injury to the plaintiff is claimed to have been the existence of a hole or gulley five feet long, three feet wide and four feet deep into which the plaintiff fell as he dropped from the locomotive.

He made no examination of it at the time of the accident but on the following day from the rear of an east bound train in motion, he observed a hole or gully at or near the point where he had suffered his injury. There is no positive identification of the hole or gulley he then saw as being the same one into which he had actually fallen. Nor is there any identification of the spot by any other witness. The plaintiff testified to the appearance of the hole he saw on the following day as indicating that it had been there for a considerable length of time, but no knowledge of any defect is brought home to the railroad, or any of its employees.

Can it be said that the existence of such a hole, assuming for the time being that it did exist, constitutes actionable negligence?

A number of railroad men testified as to the conditions of the approach to switches on the railroads by which they were employed, but their evidence only shows that different modes prevail upon different roads, not that there is any generally recognized method of construction.

Assuming, as for the purpose of the present inquiry must be done, the absolute truth of all the plaintiff's testimony, and that the railroad company had constructed no special walk or path for those operating the switch, that fact alone is not sufficient to fasten a liability upon the appellant, as being an act of negligent omission on its part.

It was further claimed by the plaintiff as an act of negligence that the embankment or slope upon which the railroad

was built did not come up to the bottom of the ties at this point by a considerable distance; but the plaintiff also testified that the road at this point was on a curve, and other witnesses testified without contradiction that because of this curve, the rail on that side was two and a half inches higher than on the other side. This fact would of itself show a reason for the elevation of the ties at this point over that maintained under different conditions.

The rule of law in this case is that announced by Judge Alvey in *State* v. *Malster,* 57 Md. 309: "It is incumbent upon the plaintiff to show affirmatively all the elements of the right to recover. Unless the Court can see that there is such evidence in the cause as will fully support a verdict, if the jury should find it to be credible and proper to be made the basis of their findings, it becomes an imperative duty of the Court to instruct the jury to find their verdict for the defendant," and this statement has been followed and adopted in numerous cases since. The refusal of the defendant's first prayer was, therefore, clearly prejudicial error.

In view of this conclusion, it is not essential that the second question presented by the record, viz, the assumption of risk by the appellee, should be discussed at any length. It is, however, proper to say that under the adjudicated cases the appellee is precluded from recovery upon this ground also.

In *Masterman* v. *Namquit Worsted Mills,* 32 R. I. 10, the plaintiff turned an ankle, and the accident was said to have resulted from an inequality in the floor; his arm was caught in some belting and injured. He sued the master for negligence in the construction of the floor, and it was held that even if it could be said that the defendant was negligent in the construction of the floor, it was a defect as obvious to the plaintiff as the defendant, and that as it was so obvious he assumed the risk, and the verdict for the defendant was sustained.

In the *A. T. & S. F. R. R.* v. *Alsdurf*, 47 Ill. App. 200, a brakeman was killed on a siding. In the center of the track the spaces between the ties were filled to the top of the ties, and then recorded so that there was no ballast at the ends of the ties. In deciding the case the Court says: "In the absence of any agreement the railroad was not bound to furnish a better track than such as were in general use or to furnish such a track as the jury might rightfully regard as safer than the customary one. The deceased must be held to have understood the ordinary hazards attending his employment as a brakeman, and to have voluntarily taken upon himself those hazards when he entered appellant's employment. Hazards arising out of the usual and general method of construction on well managed railroads of sidetracks upon which brakemen perform their duties must be considered as ordinary and incidental to the business generally, and, therefore, as being generally assumed by the contract of employment."

In *Fletcher* v. *Freeman-Smith Lumber Co.*, 98 Ark. 202, it is said: "Where a brakeman received injuries at his accustomed place of work, the risk of danger from the steepness of the grade, being open to his observation when he took service, was assumed by him." And the same rule has been adopted and followed in this Court—*Westinghouse Manufacturing Co.* v. *Monroe*, 129 Md. 59, and cases there cited.

For the reasons thus indicated the judgment appealed from must be reversed, without a new trial.

*Judgment reversed, with costs.*