## HAMM v. TEXAS & N. O. R. CO. (No. 528.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 29, 1920. Rehearing Denied April 28, 1920.)

Master and servant ⊜⇒204(1)—Employé, uncoupling moving cars with knowledge of uneven condition of roadway, assumed risk, precluding recovery under federal act.

Railroad employé, 26 years of age, intelligent and experienced, having full knowledge of the uneven condition of roadway which caused his fall while between moving cars which he was uncoupling, held to have assumed, as a matter of law, the danger of the risk, precluding him from recovering damages under federal

Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Suit by Henry Hamm against the Texas & New Orleans Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Collins & Morris, of Beaumont, for appellant.

Orgain, Butler, Bolinger & Carroll, of Beaumont, for appellee.

BROOKE, J. This suit was filed by appellant against appellee in the district court of Jefferson county, Tex., for damages for personal injuries alleged by appellant in his petition to have been received by him on October 10, 1917, while he was employed by appellee and in the course of his employment. Appellant was injured on the morning of October 10, 1917, while he was uncoupling cars in the course of his employment at a station known as Hyatt, on the railroad line of appellee between Beaumont and Jacksonville.

In his petition he alleged that his foot was caught by a wheel of a freight car while he was uncoupling two cars, and that said car was moved, after catching his foot, till it mashed and crushed his leg nearly to his body, requiring two amputations before the limb would heal, and leaving the end of the stub of his leg only about three inches from his body. He alleged as grounds of negligence on the part of appellee the uneven surface of the roadbed near the switch stand where he was required to work in uncoupling cars; that the ties were not filled in between them near the ends, and that they were uneven, rough on top, and rotten and defective, and that there were gaps and niches and notches near the ends of said ties and on the tops of same from the rails to the ends. He alleged that it was negligence on the part of appellee to leave its road in that condition near a switch stand where appellant and other employés had to work, and that he was standing on top of one of said ties while making the uncoupling, and that on account of the uneven and rotten surface of the ties he lost his footing, and was caused to slip off, and that his foot went between two ties, and, because it was an unfilled place to a depth of about seven inches, such fall caused his foot to get caught under the car wheel and crushed.

He further alleged that the engineer on the train was negligent in backing up said train while plaintiff was between two cars and with greater force than usual, and without ringing the bell as required by the rules of the company, and that the negligent acts of the engineer, concurring with the other negligence alleged, caused this injury.

The suit was brought under the federal

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), and it was agreed that the car that injured appellant was loaded with interstate shipment. Appellee answered by general demurrer, general denial, and pleas of contributory negligence and assumed risk. Issues joined, appellant offered evidences upon the issues, and at the conclusion of appellant's evidence appellee moved the court to instruct the jury to find for it upon the evidence as offered by appellant, which motion the court granted, and instructed the jury to find for appellee. A motion for new trial was seasonably filed by appellant, which was by the court overruled, to which action of the court appellant excepted and gave notice of appeal to this court, which appeal was duly perfected, and appellant is now before this court on assignments of error in his motion for new trial, and on assignments subsequent to the overruling of the motion for new trial, complaining of the action of the court in overruling said motion.

Appellant's first assignment of error is as follows:

"This suit being brought under the federal Employers' Liability Act, and there being evidence upon which the jury could have found that appellant was injured as the result of negligence of appellee the risk of which was not assumed by him, it was fundamental error for the court to instruct the jury to find for appellee."

The first proposition under this assignment is:

"In a suit for personal injuries by one injured while working for a railroad, and in the course of his employment, while engaged in helping to operate a railroad train carrying an interstate shipment, there being evidence that plaintiff's injuries were due to the negligence of defendant in permitting rotten and defective ties to remain under its railroad track, of which plaintiff had no knowledge, and that said defective ties caused plaintiff to lose his footing and fall, in part causing the injury, it was fundamental error for the court to instruct the jury to find for defendant."

The first counter proposition to this assignment is:

"An employer is not liable where the injury was not caused by any defect in the place, which affected its safety when used in an ordinary way and for the purposes for which it was intended."

In determining whether or not the condition of a railroad track is negligence, there must be considered in that connection the purposes for which it is to be used. The primary purpose of a railroad track is for operating trains thereon and make it safe for passenger and freight traffic. It is testified by plaintiff's witness, who was an ex-section man, that to fill in between the ties, the points where the track is not ballasted, makes the track dangerous in wet weather for the operation of trains thereon. Under the law requiring railroad cars to be equipped with automatic couplers, etc., it is not necessary for trainmen to go between the cars for the purpose of coupling and uncoupling the cars. The rules of the company provide, as testified by plaintiff, that trainmen must not go between the cars when the cars are in motion; and, as our courts have held, the railway company, in the construction of its tracks and in the handling of its train, is entitled to rely upon the rules of the company being obeyed. A reasonable construction of the rule forbidding trainmen going between cars when they are in motion will prohibit a trainman giving a signal authorizing the train to be put in motion then going between the cars. The track, not having been constructed for the purpose of being used by a brakeman or trainman while the train was in motion, was perfectly safe when used for the purposes for which it was intended, and only became dangerous when it was used for a purpose other than for which it was intended, and therefore its condition cannot be said to be negligence.

The second counter proposition to the above assignment is:

"The situation being open and obvious, and such a situation as could be seen at a mere glance, the plaintiff will be presumed to have had knowledge of the condition of the track, and will be held to assume the risks resulting therefrom."

The plaintiff, Henry Hamm, testified as follows:

"I was raised at Warren, Tex. That is near Hyatt, Texas, where I was hurt. I was familiar with the railroad at that point all along there. I could not say I was familiar with it from the time I was a boy, but for years I had noticed the track. I knew the condition of the track where I was hurt. I knew it for the reason that I had seen it before. At the time I was hurt it was in the same condition it had been in ever since I had noticed it. I knew all about its condition. I have seen the condition, and have passed over it. I never did give the track at this place my personal examination; that is, never did make any critical examination of it. If my eyes fell in the direction of the road at this place I could see it and see its situation. I testified that I knew the condition of the road at that place, and had known it for a long time, and the condition was the same as it had been for a long time, and that was true. I have been familiar with the track at this point and in that neighborhood and along the track there, and had frequently seen it before I was injured. I had worked along that track where I was injured for several years, and the condition of the track there was the same when I was injured as it had been for several years. I testified only from my own knowledge. I testified by oral deposition that I knew the ties were in that condition, because I had seen them that way before, and that was true. I continued to work for them, knowing that situation and danger, and I had to get by. I never said anything to the company about fixing the road.

I never asked the railroad company to remedy that situation, nor had they ever promised to remedy it. I assume that it was their business and not mine, with reference to the track." Railway Co. v. Hynson, 101 Tex. 543, 109 S. W. 929; Jacobs v. Southern Ry. Co., 241 U. S. 229, 36 Sup. Ct. 589, 60 L. Ed. 970; Railway Co. v. De Bord (Sup.) 192 S. W. 767; Railway Co. v. Sanner, 130 Md. 581, 101 Atl. 587; Lillian Butler v. John D. Frazee, 211 U. S. 459, 29 Sup. Ct. 136, 53 L. Ed. 281; Patton v. Dallas Gas Co., 108 Tex. 321, 192 S. W. 1060; Bomar Cotton Oil Co. v. Snipes, 106 Tex. 181, 161 S. W. 1.

The first assignment of error is overruled.

Appellant's second independent assignment of error is as follows:

"This action being under the federal Employers' Liability Act, making railroad companies engaged in interstate commerce liable for injuries received by an employé in the course of his employment, where the negligence of such company, its agents, servants, or employés, in whole or in part caused such injury, and there being evidence that plaintiff's injury was proximately caused by the negligence of defendant in leaving defective ties under the railroad near the switch where plaintiff was required to work, and that plaintiff did not know of such defect, it was error for the court to instruct the jury to find for defendant, and to overrule plaintiff's motion for a new trial, when these matters were directly called to the court's attention in plaintiff's motion for a new trial."

Appellee's counter proposition under this assignment is that plaintiff, being aware of the condition of the track, and voluntarily continuing in the employment of the company, assumed all risks of injury arising from said conditions.

A reading of plaintiff's testimony in this case as given on the stand by him shows without question that the plaintiff knew of the condition of the track where the accident occurred. It shows that the condition of the track, if negligence on the part of the company, had existed for months and for years preceding the accident, and, being a condition with which he was familiar, he will be charged as a matter of law with the danger arising out of the situation, because it appeared from the evidence that he was 26 years old, a man of good intelligence, and experienced in the kind of work which he was doing. The fact that he denied it was dangerous is overcome by his later admission that he did not stop to think, and further that he knew at the time of the trial that it was dangerous to go in between moving cars. He knew it was dangerous to be between cars when they commenced to move on any kind of a track, and that he knew at the time of his injury and prior to his injury that it was dangerous to be between cars when they commenced to move on any track.

In the case of Butler v. Frazee, supra, it is stated by the Supreme Court of the United States:

"One who understands and appreciates the permanent conditions of machinery, premises, and the like, and the danger which arises therefrom, or, by the reasonable use of his senses, having in view his age, intelligence, and experience, ought to have understood and appreciated them, and voluntarily undertakes to work under those conditions and to expose himself to those dangers, cannot recover against his employer for the resulting injuries. Upon that state of facts the law declares that he assumes the risk. The rule is too well settled to warrant an extensive discussion of it or an attempt to analyze the different reasons upon which it has been held to be justified. The rule of assumption of risk has been thought by many a hard one when applied to the complicated conditions of modern industry, so largely conducted by the aid of machinery propelled by irresistible and merciless mechanical power, and the criticism frequently has been made that the imperative need of employment leaves to the workman no real freedom of choice, such as the rule assumes. That these considerations have had an influence is shown by the notorious unwillingness of juries to apply the rule, and by the legislative modifications of it which, from time to time, have been made, as, for instance, by Congress in the Safety Appliance Law. Schlemmer v. Buffalo, R. & P. R. Co., 205 U. S. 1, 51 L. Ed. 681, 27 Sup. Ct. Rep. 407. But the common law in this regard has not been modified in the District of Columbia, and we have no other duty than to enforce it. No question has been made in the case at bar that the rule prevails and is relevant to the facts of this case. The contention, however, is that, as the plaintiff testified, in substance, that she did not know and appreciate the danger which she was encountering, that testimony, with the other facts in the case, raised an issue for the jury, and that it could not be said, as matter of law, that the risk had been assumed. This contention is sustained by a well-considered case. Stager v. Troy Laundry Co., 38 Or. 480, 53 L. R. A. 459, 63 Pac. 645. See Fronk v. J. H. Evans City Steam Laundry Co., 70 Neb. 75, 96 N. W. 1053.

"Where the elements and combination out of which the danger arises are visible, it cannot always be said that the danger itself is so apparent that the employé must be held, as matter of law, to understand, appreciate, and assume the risk of it. Texas & P. R. Co. v. Swearingen, 196 U. S. 51, 49 L. Ed. 382, 25 Sup. Ct. Rep. 164; Fitzgerald v. Conn. River Paper Co., 155 Mass. 155, 31 Am. St. Rep. 537, 29 N. E. 464. The visible conditions may have been of recent origin, and the danger arising from them may have been obscure. In such cases, and perhaps others that could be stated, the question of the assumption of the risk is plainly for the jury. But where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employé is of full age, intelligence, and adequate experience, and all these elements of the problem appear without contradiction from the plaintiff's own evidence, the question becomes one of law for the decision of the court. Upon such a state of the evidence a verdict for the plaintiff cannot be sustained, and it is the duty of the judge

presiding at the trial to instruct the jury accordingly. Patton v. Texas & P. R. Co., 179 U. S. 658, 45 L. Ed. 361, 21 Sup. Ct. Rep. 275, and cases there cited."

Again, in the case of Railway Co. v. Hynson, supra, the opinion written by the late Chief Justice Brown, where the injury arose out of an accident wherein the plaintiff, while switching in the yards, got his foot caught in a guard rail, causing it to be thereby run over, the court said:

"Hynson had been engaged in running on different roads as a brakeman and had been acting as a switchman in the yard for about 7 years and had worked in such yards both at day and night time. He had been engaged at work in this yard as brakeman and switchman for about seven months, working from 7 p. m. to 7 a. m. each night. Hynson testified that he had never noticed whether the guard rails in the yard were blocked or not until after he was injured; that he never thought about it, and that if he had looked at it he would necessarily have seen that they were not blocked. The evidence showed that there was one block near the passenger depot and two blocks in the guard rails at a point near to the place where the injury occurred. Hynson had seen the block near the depot because he passed over it every day, but he had not noticed the block down near to where he was injured at all, nor any of the blocks in any other part of the yard.

"At the time of receiving his injury Hynson was engaged as a brakeman in switching a car from a track in the yards of the plaintiff in error to the connecting track of the Texas & Pacific Railroad. He had just passed over the switch where the guard rails were and was about 40 feet from the end of the guard rails when it was started back so as to be placed on the connecting track of the Texas & Pacific. He knew that the switch was there and that the guard rails were there. He received the signal to uncouple the car and attempted to do so by the use of the handle provided for uncoupling the cars without going between them, but the instrument failed to work for some reason, and he stepped between the cars to pull the pin out and was walking along the track when his foot was caught in the guard rail and while hanging onto the car was dragged until his foot was pulled out between the rails and badly injured.

"At the trial the district judge instructed the jury to return a verdict for the defendant which was done and judgment entered accordingly. The Court of Civil Appeals reversed this judgment and remanded the case for a new trial. This writ of error was granted because the decision of the Court of Civil Appeals in this case was in conflict with the decision of the Court of Civil Appeals of the Fifth District in the same case on a former trial, upon the question that as a matter of law Hynson assumed the risk of the unblocked condition of the guard rails in the yard and therefore could not recover for his injury.

"The decisions of this court have established the law to be that 'the servant owes no duty of inspection. He assumes the risks of a danger of which he has actual knowledge, and of such hazards as he would have learned by the exercise of that ordinary circumspection which a prudent man would have used in the particular employment. Since, in the absence of knowledge to the contrary, he may rely upon the assumption that the master will do his duty, he is under no obligation to look out for the master's negligence; but he cannot shut his eyes to dangers that are obvious to an ordinary man, or to an experienced man if he be experienced.' Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Tex. 76 [33 S. W. 334]. Hynson was an experienced man in the work in which he was engaged, therefore, must be held in law to have known what he would have discovered in the exercise of 'that circumspection that a prudent man would use in the particular employment.' The danger consisted in the failure of the railroad company to block the guard rails in its yard, which was obvious to a casual observation, of the guard rail, and if Hynson had looked at it he would have seen that it was unblocked and would have known that there was danger of getting his foot caught if he walked over it. His own testimony shows that he did not think of the condition of the guard rail, nor look to see if it was blocked. His failure to exercise the diligence of thinking about his work and about the dangers that he was encountering cannot excuse him from the liability of having assumed the risk of the defect which existed in the guard rails. As stated in the quotation above, one who is engaged in a dangerous service of this kind cannot 'shut his eyes' to those things that would be obvious to a man who is ordinarily vigilant in protecting himself from injury. It would be impossible for the railroad company to guard a man against dangers who neither thought of nor looked when he was in the presence of danger; nobody could think for Hynson except himself. We conclude that Hynson assumed the risk of injury in performing his service in this yard. If the railroad company was negligent in not blocking the guard rails, still the risk of damage was assumed by Hynson and he cannot recover on that account."

Appellee seems to recognize the fact that contributory negligence on the part of plaintiff would not constitute a bar to his right of action, except that contributory negligence was the sole cause of the injury, but there is a clear distinction between contributory negligence and assumed risk. The identical state of facts may raise both defenses. In many cases the facts would present a question for a jury to determine as to whether there was contributory negligence when the same state of facts would show an assumption of risk as a matter of law. The question to be determined from the standpoint of contributory negligence is whether or not a man under the same or similar circumstances would have done as the injured party did under the circumstances. This may present a question of fact for a jury, but when being considered from the standpoint of assumed risk, the question is, Did the injured person know of the conditions, or must he necessarily have known them in view of the situation? and, if so, as a matter of law, it would be said he assumed the risks of injury arising from the situation.

The plaintiff in the court below, and by his brief filed in this court, says that at most the facts in the case present a question of contributory negligence, and not one of assumed risks. While the facts tend strongly to show contributory negligence, and, if that question was being considered, would, as a matter of law, we believe, show him guilty of contributory negligence, it also presents the question of assumed risk. This is illustrated by the case of Jacobs v. Southern Railway Co., 241 U. S. 229, 36 Sup. Ct. 589, 60 L. Ed. 970, wherein one was injured while attempting to get aboard an engine, by reason of a pile of loose cinders being near the track, and when plaintiff stepped upon said pile of cinders it gave way under his feet, causing him to fall. The negligence charged in that case was that the railroad company caused and permitted to be within dangerous proximity to the tracks the pile of loose cinders over which plaintiff stumbled and slipped and was drawn under the locomotive. The defendant answered, setting up that the said pile of cinders had been allowed to accumulate in the same place as they were at the time of the accident for many years prior 'to the accident, and these facts were well known to the plaintiff, and that he assumed the risk of danger from said pile of cinders, if there was any danger in allowing them to remain there.

Appellee's fourth counter proposition is that the evidence failing to show with any degree of certainty that the alleged negligent condition of the track caused the accident, the evidence was insufficient to show the condition of the track to be the proximate cause of the injury, in that the evidence was in such a state that it could not be said by the jury with any degree of certainty whether the condition of the track or some other cause was the proximate cause of the injury.

Henry Hamm testified:

"I had my left foot on the inside of the rail and the right one on the outside, when my right foot slipped off of the tie on the outside of the rail, and in an effort to protect myself while I was falling I managed to get my foot out from between the rails, but my right foot got on the rail, and my foot caught it in some way or other. My deposition, taken on May 3d, I stated that I did go in to cut the air hose, and as I started to step out I stumbled in some way —don't know just exactly how—and the train ran on me immediately. I think I testified in my deposition that I didn't know just how the accident occurred, but that it was caused from my stumbling, and that was the whole cause of the accident. I so testified, and I think that was true. I know that one of my feet stumbled off of one of the ties. All that I know, that my foot gave way; for some reason my footing gave way, but I couldn't tell for what reason. I never mentioned that it was a rotten tie that caused the accident. I had never given it any thought, nor can I say that the accident was caused by a rotten tie, because I do not know what was the cause of it. I don't know until this day what caused it, only my footing gave way. I had my left foot inside of the rail, and the right one on the outside, holding to the car with my left hand, and reaching down with my right hand to uncouple the air hose, when my right foot slipped off of the tie on the outside of the rail, and in an effort to protect myself while I was falling I managed to get my left foot out from between the rails, but my foot got caught on the rail, and the wheel caught it in some way or other, in the scramble there. My foot slipped off of the tie; my footing gave way; yes, sir. It is about the same thing, I suppose; giving way and slipping. My footing gave way, or might have slipped off, or stumped my toe, I don't know which; I couldn't figure it out. I have stated that I stumped my toe on the ties, on the wooden ties, where they were not filled up between. I have stated that when I first fell, and that was the only time I did fall, and that stumping my toe on that tie caused the whole works." Texas & Pacific Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S. W. 4; Snipes v. Bomar Cotton Oil Co., 106 Tex. 181, 161 S. W. 2; Worden v. Kroeger, 184 S. W. 583.

The fifth counter proposition is that the evidence showing that the engineer moved his train backward in accordance with the signal given by the plaintiff, and in the manner directed by plaintiff, there was no actionable negligence on the part of the engineer in so moving said train without warning.

Plaintiff testified:

"We got north of the switch with the cars. I turned the angle cock and stepped back and gave the engineer the slow signal to come back, and I reached to uncouple the air line, and when I went in there the train started. On this particular time I failed to get back before they started. When I went in to lift the air hose the car was standing. I had signaled the engineer before that. I had done that before. The engineer did not give me any warning that the engine was going to start. I heard no bell. The engine started immediately after I gave him the signal. After turning the angle cock I always stepped out and gave the engineer a signal to come back, and then stepped in and cut the air hose, and I also got out before the engine started. This time I failed. In the oral deposition taken on May 3d I think I said I had given the back-up signal to back up slowly. Then went in to disconnect the air hose, and the engineer followed my instructions and backed up slowly, 'and did exactly what I told him to do. He did exactly what I expected him to do. I think I so testified, and I think it is true that the engineer did what I expected him to do. I knew he was coming back, and I expected him to come back, and I expected him to comply with my request. That engineer operated the train as I told him to operate it. He controlled the engine, but I gave him the signal as to what to do, and I expected him to comply with the signal. I don't know whether I listened for a bell to ring or not. I don't know whether I was paying any attention to the bell or not. I don't remember whether I was listening for the bell or not, but I do recall that the engineer did just what I expected him to do, and when I signaled him, the train came back. I gave the

signal to the engineer to back back. I did not expect it to move until I went in and cut the air hose and got out. I gave the engineer the signal to move, and I expected him to comply with the signals, but I thought I could cut the air hose and get out before he moved it; I have done that lots of times, but I got caught this time. After I gave the signal I could have signaled the engineer not to start. I had an opportunity to cut the hose, and then signal the engineer. I never did pay any attention to whether the bell was ringing; and I wasn't paying any attention on that occasion. I was not relying on him ringing the bell before he started the train. I couldn't say that the train moved back quicker at the time I was hurt than I expected." Hettich v. Hillje, 33 Tex. Civ. App. 571, 77 S. W. 642; Stamford Oil Mill Co. v. Barnes, 103 Tex. 415, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111.

The sixth counter proposition is that the plaintiff having ordered the train to move backward, and not relying upon any warning or the ringing of a bell, the failure to give such warning and the failure to ring the bell before moving the train backward cannot be considered the proximate cause of plaintiff's injuries. Smith v. Humphreyville, 47 Tex. Civ. App. 140, 104 S. W. 498; Railway Co. v. Williams, 41 S. W. 501; Railway Co. v. Abendroth, 55 S. W. 1122; Snipes v. Bomar Cotton Oil Co., 106 Tex. 181, 161 S. W. 2; McDonald v. Railway Co., 86 Tex. 1, 22 S. W. 939, 40 Am. St. Rep. 803.

It certainly cannot be argued that there is any merit in the contention that the engineer moved the train backward without giving the plaintiff warning, when plaintiff's evidence shows beyond any question, not only that he knew the train was going to be moved, but 'that he controlled its movement, and had called for its movement, and it was without his power, by signaling the engineer, to prevent its movement.

The seventh counter proposition is that the facts showing that the train moved back at the instance of the plaintiff, and as he expected it to move, the plaintiff going in between said cars after he gave the signal for its movement, will in law be considered the sole proximate cause of the injury; and the eighth counter proposition is that the plaintiff, in attempting to go in between said cars after he had given the signal for their movement, and expecting them to move in accordance therewith, assumed all risk of injury resulting from the movement of said car— citing Railway Co. v. Hynson, 101 Tex. 543, 109 S. W. 929; Jacobs v. Railway Com., 241 U. S. 229, 36 Sup. Ct. 589, 60 L. Ed. 970; Railway Co. v. De Bord (Sup.) 192 S. W. 767; Railway Co. v. Sanner, 130 Md. 581, 101 Atl. 587; Lillian Butler v. John D. Frazee, 211 U. S. 459, 29 Sup. Ct. 136, 53 L. Ed. 281; Pat-

ton v. Dallas Gas Co., 108 Tex. 321, 192 S. W. 1060; Bomar Cotton Oil Co. v. Snipes, 106 Tex. 181, 161 S. W. 1.

The ninth counter proposition is that, the evidence showing that the plaintiff could have disconnected said air hose before giving the signal for the movement of said cars, he, having voluntarily determined to give the signal for their movement, and then to disconnect the same, assumed all risk of injury resulting to him by reason of his having chosen the unsafe way, rather than the safe way, of doing the work.

Henry Hamm testified:

"I could have cut the air hose and then signaled the engineer to back the train. After I had given the signal to move I could have signaled the engineer not to start. I had the opportunity to cut the hose and then signal the engineer. The air hose can be disconnected just as easily when the train is standing still. The air hose can be disconnected easier when the cars are standing still, but they can be disconnected while they are running. I knew at the time I gave the signal to back up that I had not cut the air hose. I suppose I could have cut the air hose before I gave the signal to the engineer to back back. I do not know that the rules of the company require that the brakeman cut the air hose before they give the signal to back up. I knew that the rules say that a brakeman should not go between the cars while they are moving. That the engineer operated the train as I told him to operate it. The engineer controlled the engine, but I gave him the signal as to what to do, and I expected him to comply with the signal."

It seems to be well settled by the authorities of this state that if there are two or more ways of doing the work, one of which is safe, and the other hazardous, and the worker voluntarily chooses the hazardous way, he will be held to assume the risk of injury resulting from such method of doing the work.

In our judgment, there was no actionable negligence on the part of the defendant or its engineer, and, if there was such, the risk of injury resulting therefrom was assumed by the plaintiff. The condition of the track was plainly observable to him, and in fact was known to him, and had been known to him for many months. As to the action of the engineer, it was called for by plaintiff, and was in accordance with plaintiff's demand.

We affirm the action of the trial court in all things.

HIGHTOWER, C. J., and WALKER, J. We agree that the judgment of the trial court should be affirmed on the ground that appellant assumed, as a matter of law, the risk that resulted in his injury.