ROBERT L. HATCH *vs.* PORTLAND TERMINAL COMPANY.

Cumberland.    Opinion November 27, 1925.

*The carrier's liability for personal injury must be determined by the Federal statute*
*if both employer and employee were engaged in interstate transportation.    Negligence*
*under the Federal statute is determined under the rule of the common law.    Contrib-*
*utory negligence and assumption of risk are not an issue under our workmen's*
*compensation act, but where the Federal statute controls assumption of risk may be*
*an issue, except where the negligence of a fellow servant caused the injury, or, unless*
*the injury was caused by the violation of some statute enacted to promote the safety*
*of employees.*

*Contractual assumption of risk, and voluntary assumption of risk, are distinct.*
*Assumption of risk is a question of fact for the jury where the evidence is conflicting.*

In the instant case the last work performed by plaintiff before the injury occurred
was interstate in character, and unfinished, and work of a different character
not begun.    Disassociation had not been reached and there had not been any
break in the continuity of service.

The jury were warranted in finding that there was liability on the part of the
defendant, but the verdict was clearly excessive.

On exceptions and motion by defendant.  An action to recover
damages for personal injuries sustained by plaintiff while in the
employment of defendant as switchman in its yard at Portland.
One question raised at the trial was whether the Federal statute,
known as the Employers' Liability Act, controlled, or whether the
case was governed by the Workmen's Compensation Act of this
State, that is, as to whether the plaintiff and defendant were engaged,
at the time of the injury, in interstate or in intrastate commerce.
At the close of the evidence the defendant requested the directing
of verdict which was denied, and exception saved.    Defendant also
requested the instructing of the applicability of the Federal act,
which was refused and exception taken.    The jury rendered a verdict
of $24,486.20 for plaintiff and defendant filed a general motion for
a new trial.

Exceptions overruled.

If within thirty days from filing of the rescript a remittitur of all of the verdict in excess of $15,000 be filed, motion for a new trial overruled; otherwise motion sustained and new trial granted.

The case fully appears in the opinion.

*Bradley, Linnell & Jones*, for plaintiff.

*Charles B. Carter*, for defendant.

SITTING:   WILSON, C. J., PHILBROOK, DUNN, STURGIS, BARNES, JJ.

DUNN, J.  Personal injury action.  Counts at commom law as aided by the Workmen's Compensation Act of Maine, and count under the legislation of the Congress of the United States commonly known as the Federal Employers' Liability Act (R. S., Maine, Chap. 50 and amendments; 35 U. S. Stat. at L., 65, Chap. 149). Plea general issue with brief statement:   (1) the Federal act governs the case;  (2) the risk assumed contractually;  (3) plaintiff's contributing negligence.

The trial presiding judge overruled the motion, advanced as evincible in all the evidence, to direct verdict for the defendant, and refused the request preferred during the charging of the jury, to instruct the applicability of the Federal act.   Exceptions were noted and allowed.

Special answers by the jury found the plaintiff free from negligent conduct proximate to the harm, and held that if the Federal act be pertinent, there should be no proportionate diminishing of reparation for the injury sustained.   Plaintiff verdict, $24,486.20.   Usual-form motion to set it aside.

In the evening of 27 October 1923, while at his employment by the Portland Terminal Company, this plaintiff, Robert L. Hatch of name and aged 23 years, was hurt.

The defendant has a railroad terminal in Portland.   This terminal links the Maine Central and Boston & Maine railway systems.   The terminal company provides yard trackage for, and does the switching and classifying of, freight cars and their commerce, for hire.   It is both an interstate and intrastate carrier of goods.

Mr. Hatch was a switchman.   His job was to set switches, as his superior in rank would indicate tracks, in distributing cars from arrived trains.   No work called him on trains.

In the terminal on track 4 was a train. Some of its cars were "at home," and some were billed or destined "west," or beyond this State.

At half past seven o'clock, as witnesses judge the time, Hatch aligned the switch for track No. 11, and onto it two of the cars with interstate lading were shunted. Foreign-bound cars, laden or empty, classify the same. *North Carolina R. R. Co.* v. *Zachary*, 232 U. S., 248, 58 L. ed., 591. Duty at the switch done, plaintiff walked to and stood at a point near switch post 4, between tracks 3 and 4, that requisitely he would be near his train, as he says. He stood facing the train, with vision slightly averted to see the train and the track ahead, awaiting further orders, doing nothing. An oil burning lantern was in his hand, and electric lights were on in the yard, but it was dark where Hatch was; he could not distinguish a man fifty or or sixty feet away; that the whole yard was dark is of the negligence alleged.

The train was in movement along track 4. The cars were empty rack or slatted ones. A car hit Mr. Hatch. He fell beneath the trucks and in consequence lost his left foot and ankle.

The injured man alone saw the accident. He does not know absolutely how it occurred. Dizziness may have caused him to fall under the train. Inadvertently, in the darkness of that night, he may have gotten close by the rail and been struck by the corner or side of the car, the car being in normal condition. He may have been standing where he had the right to stand, and have been knocked down by a car door left unfastened, swung outward by the motion of the train, no attributable fault on his part concurring. Evidence tends to show that the unfortunate occurrence may have been in any of these ways, and also tends to show the contrary. Direct evidence that a door, hanging loose on a rod at the top and unsecured at the bottom, which swung towards him as the train rounded a curve, comes from the plaintiff. He testifies he saw the door, or the button of the door, swinging out just before it threw him. The button is the wooden latch that holds the door when closed, somewhat after the manner of a fastening on an old-time barn door.

Defendant tacitly recognizes the competence of joining counts under the State law and the Federal act, that recovery may be had as the jury shall find. *Davis* v. *Green*, 260 U. S., 349, 67 L. ed., 299; *New York C. & H. R. R. Co.* v. *Kinney*, 260 U. S., 340, 67 L. ed., 294; *Osborne* v. *Gray*, 241 U. S., 16, 60 L. ed., 865; *Wabash R. R. Co.* v.

*Hayes*, 234 U. S., 86, 58 L. ed., 1226; *Corbett* v. *Boston & Maine Railroad*, 219 Massachusetts, 351; *Koennecke* v. *Seaboard Air Line Ry.*, (S. C.), 85 S. E., 374.

The Federal act, in the constitutionally committed field plenarily covered by it, supersedes all State laws. *Mondou* v. *New York, N. H. & H. R. Co.*, 223 U. S., 1, 56 L. ed., 327; *Michigan Central R. R. Co.* v. *Vreeland*, 227 U. S., 59, 57 L. ed., 417; *Seaboard Air Line Ry.* v. *Horton*, 233 U. S., 492, 58 L. ed., 1062. Hence, if the employee of a railroad engaged in both interstate and state transportation is injured, while both were engaging in interstate, the carrier's liability must be determined by the Federal statute. *Industrial Acct. Com.* v. *Davis*, 259 U. S., 182, 66 L. ed., 889; *Shanks* v. *Deleware, L. & W. R. Co.*, 239 U. S., 556, 60 L. ed., 436; *Wabash R. R. Co.* v. *Hayes*, supra; *Foley* v. *Hines*, 119 Maine, 425. But the facts, and not the pleadings, determine whether the wrong done in any given case confers a right to recover under the law of this State or the Federal act. When the evidence unfolds in which employment the injury occurred, then is it that the form of action appropriate in the orbit of authority defines what is submitted for judicial inquiry. A precise ruling, one that the eye could catch at a glance and which might be instantly applied, has not been attempted to be laid down. *Industrial Acct. Com.* v. *Davis*, supra. At the time of the injury, the employer and employee must be in interstate business, or in work so closely related to transportation of this sort, or so directly connected with it, as substantially to form a part of it. *Industrial Acct. Com.* v. *Davis*, supra; *New York C. & H. R. R. Co.* v. *Carr*, 238 U. S., 260, 59 L. ed., 1298.

In State and Federal cases alike liability is predicated upon negligence to be proven by the plaintiff, together with his own resulting injury. *Watkins* v. *Hustis*, 79 N. H., 285. Negligence, in an action under the Federal enactment, means such acts of commission or omission as would, by the rule of the common law, be sufficient to take the case to the jury. *Helm* v. *Cincinnati, N. O. & T. P. Ry. Co.* (Ky.), 160 S. W., 945; *Western Maryland Ry. Co.* v. *Sanner* (Md.), 101 Atl., 587. Contributory negligence is unimportant in our State law. Assumption of risk, also taken from nonassenting employers by the Maine workmen's statute, is still open to the employer as a substantive issue where the Federal act is controlling, unless the injury was caused by the violation of some statute enacted to promote the

safety of employees.   *Chicago, R. I. & P. Ry. Co.* v. *Ward,* 252 U. S., 18, 64 L. ed., 430; *Seaboard Air Line Ry. Co.* v. *Horton,* supra; *Norton* v. *Maine Central Railroad Company,* 116 Maine, 147.   But this doctrine has no application where the negligence of a fellow servant, which the injured one could not have foreseen or expected, is the sole and immediate cause of the injury.   *Reed* v. *Director General,* 258 U. S., 92, 66 L. ed., 480.   The fellow-servant rule is abrogated in both jurisdictions.   The rules of evidence and the elements of damages, so far as they are of moment here, are identical in the two laws.

The assignment of the exceptions, of the want of evidence of negligence on the part of the defendant, is already dispelled by the previous statement that the tendency of the one line of evidence is for the plaintiff, and that of the other for the defendant.   Disputed questions of fact are within the province of a jury.   *Foley* v. *Hinds,* supra.   And, by this same token, contributory negligence is eliminated.

In the relationship of employer and employee, aside from the Safety Appliance Act, Chap. 196, 27 U. S. Stat. at L. 531 as amended, the natural risks of the employment are those which the law implies as assumed, and in regard to which the employer owes the employee no duty.   *Ashton* v. *Boston & Maine Railroad,* 222 Massachusetts 65.   Contractual assumption of risk, to use an everyday but not strictly accurate phrase, and voluntary assumption of risk, are distinct.   The danger that it might be said an employee was hired to incur, as injury from repairing defective electric wires, is contractual.   *Ashton* v. *Boston & Maine Railroad,* supra.   Failure by an employer to exercise reasonable care to provide a reasonably safe and suitable place for his employee to work in, or reasonably safe and suitable appliances with which to do the work, not so obvious that an ordinarily prudent person, mindfully going about work with his eyes open, would observe and appreciate them, is negligence. But a defendant may avoid the consequences of this negligence by showing that the plaintiff, with full knowledge and fully aware and without objection, and without the promise that the defect will be remedied, continued in the service in disregard of the failure to provide, and continuing assumed the risk.   Arkansas epitomizes well:   " 'Where one voluntarily enters into a contract of hiring with a railroad company, he assumes all the risks and hazards ordinarily

and usually incident to such employment, and will be presumed to have contracted with reference to such risks and hazards.' But while an employee assumes all the risks incident to the service he enters, he does not assume a risk created by the negligent act of his master, and only such risks as he knows to exist, or may know by ordinary care." *St. Louis, I. M. & S. Ry. Co.* v. *Tuohey,* 54 S. W., 577, 77 Am. St. Rep., 109. He does not assume the risks arising from unknown defects in engines or appliances. *Central Vermont Ry. Co.* v. *White,* 238 U. S., 507, 59 L. ed., 1433.

The risk of injury from a car door, held in position above by the track designed for it to travel on, but through negligence, loose below and swinging out, on a train moving in the night, would be for voluntary assumption. And whether the risk was assumed would depend upon conjoined facts of knowledge and appreciation and other things. Assumption of risk, where the evidence is conflicting, like other disputed questions of fact, is for the jury. *Norton* v. *Maine Central R. R. Co.,* supra.

What this plaintiff actually worked at last was interstate, but the working shift or trick was not yet past, the day's work was not done, and plaintiff stood for call to do that which the train conductor might direct the next. Work of substantial connection to interstate commerce was not finished and work of a different character begun. Disassociation had not been effected; there was no break in the continuity of serving. The train had interstate character when it came into the yard. It retained it to the time of the doing of personal injury, for all the cars had not been distributed to their appropriate places. *Reed* v. *Director General,* supra. And Hatch's duties although he had no occasion to board any train, were with and related to that train. His work was so closely connected therewith as to be part of it. *Pederson* v. *Deleware, L. & W. R. R. Co.,* 229 U. S., 146, 57 L. ed., 1125. He was under orders, "liable to be called upon at any moment, and not at liberty to go away. (He was) none the less on duty when inactive. (His) duty was to stand and wait." *Missouri, K. & T. Ry. Co.* v. *United States,* 231 U. S., 112, 58 L. ed., 144. The test of interstate controlment seems to be employment of such kind once established and the absence of transition. Liability is created where the service being rendered is of general, indiscriminate character, not segregated and tied to shipments within the State,

but applicable at least as well to the interstate commerce which the carrier is conducting. *Pittsburgh, C. C. & St. L. Ry. Co.* v. *Glinn,* 219 Fed., 148.

If the single aspect were that of employment, the refusal to instruct would appear material and harmful error, the reason being that where the facts are undisputed, whether the injured servant was in interstate commerce is for the court. But this problem has another phase. There is no feature of contributory negligence, and the rule of comparative negligence is without bearing, if the case be within the Federal act, said the jury. There is not nor could not be complaining of the rejection of evidence. State law or Federal, on either hypothesis, the company's position was made no worse on the theory of the trial. *Chicago & Northwestern Ry. Co.* v. *Gray,* 237 U. S., 399, 59 L. ed., 1018. The exceptions fail.

Approaching the motion from the angle of liability, first: Was the verdict of the jury influenced by prejudice, mistake, bias, passion? Is inherent error plainly visible in the record? Do the pages that printing made possible, and the inferential circumstances and probabilities, tell that the plaintiff's case is essentially and openly erroneous? Or, though certain testimony apparently was disbelieved, is the verdict supported by evidence which was believed, evidence which is believable, consistent, and tendering fair presumption of its truth, albeit that as a whole the evidence may seem to preponderate against the finding of the triers of fact? These questions this reviewing court must meet. And the credibility of every witness and the weight and probative value of evidence are to be determined by the jury, where the testimony and the justifiable inferences are diverse. *Baltimore & O. R. R. Co* v. *Groeger,* 266 U. S. 521, 69 L. ed., 419; decided January 5, 1925; *Bragg* v. *Hatfield,* 124 Maine, 391; *Jannell* v. *Myers,* 124 Maine, 229, *Daughraty* v. *Tebbetts,* 122 Maine, 397; *Mears* v. *Biddle,* 122 Maine, 392. The mere stating of the standard to which the motion must measure shows this ground to be unfirm. With regard to liability the verdict is not awry from the testimony and wide of the mark.

The most serious question of all presented is that the verdict is palpably excessive. Plaintiff's foot gone, the amputation was performed at the point of least loss, and an artificial limb substituted. Urinary and other troubles, incident to confinement to bed, strike one as having yielded promptly to the approved technique of medical

science.   One year had gone since the accident when the case was tried.   If Mr. Hatch had not been injured, and had worked constantly at the same wage, his earnings would have been $1586.00   Add the aggregate of the bills for hospitals, nurses, medicines, appliances, dentists, doctors, and subtract the grand total from the amount of the verdict, the remainder is more than $22,000.00.

Other elements of damages are to be measured in terms of money, not by any certain consequence or dependence of one thing upon another, as in the instance of those computable by arithmetic, but by deductive reasoning.   One human being alone could picture the sufferings, mental and physical, endured by Hatch since calamity befell him.   His portrayal bespeaks mastery and mental nimbleness. But it does not more than glimpse the future, because it cannot. Outstanding is not hopelessness, nor utter weariness, nor resigned abandonment, nor a person dead to rapture and despair.   No, it is the injured man made strong in character by his own will power, directing his own destiny, following the rules of prudence, and subjecting himself to medical prescription.   Scientific skill supplements nature.   And nature puts responsibility on the individual.

Mr. Hatch is entitled to be made whole, to the extent that money damages can make him whole, at the expense of his former employer. This is but justness for him.   Little beyond his majority in years, he must fit himself into a new job, now.   Accident has freed him from the old kind of muscular toil.   And with this freedom may come increase in mental activity.   No one knows what the future stores; clouds and darkness rest upon it.

Twenty-two thousand dollars, which is less than the verdict, time loss and expenses out, would purchase for Mr. Hatch from an underwriter, at 4% yield, on the basis of his age at the time of the trial, an annuity of $1147.30 for life.   Computation at 5% would give approximately $1300.00 annually throughout Hatch's expectancy of living, and at 6%, $1475.00.   Uninjured, Mr. Hatch earned $1586.00 a year. He is far from being totally incapacitated.   Average capability cannot be defined.   No average man exists.   But many a soldier returned to the pursuits of civil life, maimed as seriously as Mr. Hatch is, has faced the facts and adjusted himself, compensated by his Government for the estimated degree of physical disablity, and geared a world to a new efficiency.

Obviously, there is excessiveness in the amount of damages awarded by the jury. On this the court is a unit. The minority of the members would have sustained the motion for new trial, and remanded the case solely for the determining of indemnity over again. But the greater number of the personnel has voted that the assessment be divided, and that the part which, as matter of law, is considered wrong and unjustifiable, be defined; in the hope that thereby this litigation might come the sooner to an end. In obedience to their will, and in the acquiescence that reflection upon the arguments of the majority at least compels, it is recorded without disagreement, that all the verdict above $15,000.00, is so deemed.

If, on the part of the plaintiff, within thirty days from the rescript, there is formal remission or surrender of the excess of damages, the motion for a new trial will fail, and the mandate will be, motion overruled. And:

> *If no remittitur, motion*
> *sustained.    New trial.*